### MABRY *v.* STATE.

Opinion delivered October 15, 1906.

1. HOMICIDE—INSTRUCTIONS.—In a prosecution for homicide, where the defense was that the killing was done at a time when deceased was about to kill defendant's father or to inflict great bodily injury upon him, a request to charge which made defendant's acquittal depend on his own belief, without regard to any fault or carelessness on his part in coming to conclusions or the absence of reasonable grounds for such belief, was properly refused. (Page 348.)

2. INSTRUCTION—FAILURE TO MAKE REQUEST.—Failure of the court to instruct the jury as to reasonable doubt in a murder case was not error where there was no request therefor. (Page 349.)

3. APPEAL—WAIVER BY OMISSION FROM MOTION FOR NEW TRIAL.—Error of the court in failing to instruct the jury will not be considered on appeal where it was not made a ground of the motion for new trial. (Page 350.)

Appeal from Sebastian Circuit Court, Greenwood District; *William L. Moose,* Judge, on exchange of circuits; affirmed.

*T. B. Pryor,* for appellant.

1. The court erred in its instructions numbered 17 and 18. There is no authority, either in the statute or decisions of this court, for the use of the words "in the act" of killing, etc. It is sufficient if the danger appeared to the defendant to be urgent and pressing. Kirby's Digest, § 1798; 68 Ark. 310; *Hoard v. State, ante,* p. 87; 69 Ark. 658; 21 Cyc. 800.

2. The jury should have been instructed that what constitutes great bodily injury was for them to determine. 60 Ark. 82. Instructions 3 and 4 asked for by defendant should have been given. 21 Cyc. 1050; *Ib.* 1057; 73 Ark. 126; 140 Ala. 1; 67 Ark. 594.

*Robert L. Rogers, Attorney General,* and *G. W. Hendricks,* for appellee.

BATTLE, J.   Serf Mabry was indicted by the grand jury of Sebastian County, at the July term, 1906, of the Sebastian Circuit Court for the Greenwood District, for murder in the first degree, committed by killing Grant Smith by striking him on the head with a hammer.   At the same term of the court he was arraigned, pleaded not guilty, was tried, found guilty of voluntary manslaughter, and his punishment was assessed at two years in the penitentiary.   He moved for a new trial, his motion was overruled, and he appealed to this court.

The evidence tended to prove the following facts:   On the morning of the 13th of April, 1906, the father of the defendant ordered him to take a horse and go down to the place on the railroad right of way they had cultivated the year previous, and to "break it up."   He was proceeding to do so when he reached the place where he had the year before taken the fence down for the purpose of taking the horse in and out of the field, and saw Grant Smith in a field plowing.   When he commenced knocking the staples out of the post which held the wire that constituted the fence, Grant Smith ordered him away, and threatened him with violence if he brought the horse on the inside.   He hitched the horse to the fence, and returned to his father and informed him of what had occurred, and they went to the place where he undertook to enter the right of way at the time he was ordered away, and his father ordered him to tear down the fence, which he proceeded to do by knocking the wires from the posts with a hammer which he had brought with him for that purpose, when Smith again interfered and forbade his doing so.   Words followed. Smith approached the father, who was at the time attempting to lead the horse into the field, at the same time picking up two rocks, one in each hand.   As he approached near where the defendant and father were, he dropped the rocks, but the defendant testified that he did not see him do so.   When he came within reach, or striking distance, of the father, he drew back his hand and arm for the purpose of striking the father with his fist.   As he did so, the defendant struck him on the head with the hammer, and from this blow Smith died within two days afterwards.

The court gave to the jury the following instructions over the objections of the defendant:

"17. If the jury believe from the evidence that the defendant honestly believed, without fault or carelessness on his part, that, at the time he struck the blow that killed the deceased, deceased was in the act of killing the father of defendant or of inflicting upon him great bodily injury, and that the danger appeared to the defendant to be urgent and pressing, then the defendant was justified in assaulting and striking the deceased to prevent his father from being killed or from receiving great bodily injury.

"18. But the defendant would not be justified in assaulting and striking the deceased unless it appeared that deceased was in the act of killing defendant's father or inflicting upon him great bodily injury. If deceased was in the act of assaulting and beating defendant's father, with no manifest intention of killing him or inflicting upon him great bodily injury, the defendant would be guilty of some degree of unlawful homicide; and this would be true, although deceased was in the wrong in his assault upon defendant's father."

And the court refused to instruct the jury, at the request of the defendant, as follows:

"1. You are instructed that if the defendant believed, at the time that he struck Smith, that Smith was in the act of inflicting upon defendant's father serious bodily injury, or if the defendant believed that Smith was about to inflict upon his father serious bodily injury, then the court tells you that the defendant would under such circumstances be justified in assaulting and striking the deceased to prevent serious bodily injury being inflicted upon his father, and you should acquit.

"2. What constitutes serious bodily injury, and whether the circumstances in any case are such as to justify one in believing that such an injury is about to be inflicted, are matters to be determined by the jury.

"3. The defendant, under the law, is entitled to every reasonable doubt; and if there is a reasonable doubt in your mind as to whether defendant believed his father's life was in danger. or that his father was in danger of receiving great bodily injury

at the time he struck Smith, then you should give him the benefit of the doubt and acquit him.

"4. In a case of this kind the question for the jury to determine is not whether the life of a person was in danger, or whether he was in danger of receiving bodily injury, but whether under all the circumstances it appeared to the defendant that his father's life was in danger, or that his father was in danger of receiving great bodily injury at the time he struck Smith. If so, then the court tells you that he was justifiable in striking him."

The appellant's objections to the instructions copied in this opinion are: they told the jury that the appellant was not justified in assaulting and striking the deceased, Grant Smith, to prevent his father from being killed or receiving great bodily injury, unless the deceased was in the act of killing the father of the defendant or inflicting upon him great bodily injury; and were calculated to lead the jury to believe that it must appear to them that the deceased was about to kill the father or inflict upon him a great bodily injury before they could lawfully find the defendant not guilty. We do not so understand the instructions. The first clearly told the jury that if the defendant, not the jury, "honestly believed, without fault or carelessness on his part, that at the time that he struck the blow that killed the deceased, deceased was in the act of killing the father of the defendant, or of inflicting upon him great bodily injury, and that the danger appeared to the defendant" (not to the jury) "to be urgent and pressing, then the defendant was justified in assaulting and striking the deceased, to prevent his father from being killed or from receiving great bodily injury." The words "in act of" clearly mean about to. This is shown to be the meaning by a subsequent portion of the same instruction in which the court told the jury that the danger of the killing or inflicting great bodily injury must have appeared to the defendant "urgent and pressing." If this was not the meaning, the words "urgent and pressing" were meaningless. They throw light upon the whole instruction. This instruction should be construed with reference to the evidence. The evidence upon which it was based was adduced to show that the deceased was about to kill or inflict a great bodily injury upon the father of the defendant, and it did not tend to prove more. There is nothing in the instruction or the whole

case to show that the court meant that the deceased must have been actually killing the father or inflicting upon him a great bodily injury before the defendant could have taken his life to prevent the consummation of the act.

The instruction copied in this opinion, and numbered 18, is the converse of the other. In the first, the court undertook to tell the jury when the defendant would be justified, and in the latter when he would not be; and they should be construed together. The words "in the act of," used in the latter, as in the first, evidently meant about to, and the word "appeared" had reference to the defendant. It is in the past tense, and must have meant appeared to the defendant. "Appears" would have been the proper word if it meant appeared to the jury. These words were evidently used in the same sense in both instructions. We see nothing in either of them that was reasonably calculated to mislead the jury.

The requests for instructions numbered 1, 2 and 4 refused by the court, so far as correct, were covered by instructions given. The other request, numbered 3, was properly refused. It made the acquittal of the defendant depend on his own belief, without regard to any fault or carelessness on his part in coming to conclusions or the absence of any reasonable grounds of such belief, if there had been none.

Should the court, on its own motion, have instructed the jury as to reasonable doubts as to the guilt or innocence of the defendant?

In *Allison* v. *State*, 74 Ark. 454, this court said: "As there was in this case at least some evidence from which the jury might have concluded that the defendant was guilty of voluntary manslaughter, we are of the opinion that the defendant had the right to have that question presented to the jury. But the fact that an instruction on the law of manslaughter would have been proper in this case does not call for a reversal unless the defendant asked a proper instruction in reference thereto." This ruling is sustained by previous decisions of this court. In *Holt* v. *State*, 47 Ark. 196, it is said: "It is the province of the court to give in charge to the jury such principles of the law as it may deem applicable to the case. If the defendant or plaintiff desires other instructions, he may ask them; but if he fails to do so, and re-

mains voluntarily silent, he can not complain." *Benton* v. *State,* 30 Ark. 335; *Carroll* v. *State,* 45 Ark. 539.

"While in one sense," says Mr. Bishop, "it is undoubtedly the duty of the judge to give instructions to the jury covering the entire law of the case, as respects all the facts proved, still, if he omits something, and is not asked to supply the defect, the party who remained voluntarily silent can not complain." 1 Bishop, Cr. Pro. § 980, and cases cited.

In *Lackey* v. *State,* 67 Ark. 421, it is said: "In conclusion, counsel for defendants say that the charge of the circuit judge was defective and incomplete in other respects, and contend that it was the duty of the court to give the whole case to the jury, whether asked to do so or not. In support of this contention, they cite decisions of the courts of Texas, but those cases rest upon the peculiar statute of that State (2 Thompson on Trials, § 2340). So far as we know, no other State enforces such a rule. In this State it has been often held that if a party wishes the trial judge to instruct on any particular point not covered by his charge, he should ask an instruction covering such point. If he sits silent, and makes no effort to remedy the defect, he has no legal ground of complaint."

It is the duty of the court to refuse all requests for improper instructions, and in *Allison* v. *State, supra,* the court held that it was not the duty of the court to give a correct instruction, on its own motion, in place of an improper one asked for by the defendant, notwithstanding there was evidence upon which the defendant was entitled to a correct instruction if it had been asked.

The failure to instruct the jury as to a reasonable doubt was not made a ground of a motion for a new trial in this case.

Judgment affirmed.