## Court of Appeals.

January, 1906.

# THE PEOPLE v. SADIE WOLF.

(183 N. Y. 464.)

**1. CRIMES—TRIAL—ONLY MATERIAL AND COMPETENT FACTS SHOULD BE STATED IN OPENING A CRIMINAL CASE.**

The general rule in opening a criminal case is, that no fact should be stated unless it is material and competent, and, hence, proper to be proved, subject, however, to reasonable latitude where the law upon the subject is not so elementary that every lawyer should know it. Crimes not charged in the indictment, committed by other parties who are not indicted or connected with the defendant in any way, are not material or competent for any purpose; they cannot be proved and should not be stated since they tend to arouse sympathy for the complainant and prejudice against the defendant not arising out of the evidence.

**2. SAME—IMPROPER STATEMENTS BY PROSECUTING OFFICER.**

Statements made by a prosecuting officer upon the trial of a criminal case as to facts which he knows or should know are incompetent and, therefore, are inadmissible in evidence, constitute error; and the failure of the trial judge to prohibit them, or either at the time, or subsequently, to instruct the jury to disregard them is also error. Such errors, if raised by sufficient objection and exception, will, upon appeal to the Court of Appeals, result in the reversal of a judgment of conviction.

**3. SAME.**

Where a prosecuting officer in his opening address to the jury on the trial of a defendant indicted for abduction under the statute (Penal Code, § 282, par. 1) stated facts relating to heinous and revolting crimes not charged in the indictment, committed upon the person of the complaining witness by parties other than the defendant, who were neither indicted with the defendant nor connected with her in any way so far as such crimes were concerned, which facts were not material or competent as evidence for any purpose, which the prosecuting officer and the court knew or should have known, and such statements were not rebuked by the court at the time they were made although strenuously objected to by the defendant, the effect thereof is not counteracted or cured by an instruction in the charge to the jury several days after the statements were made-that the jury should "set aside whatever impressions may have been made upon you by any statements either of the district attorney or of counsel for the defense

that were not borne out by the evidence;" the defendant did not have, therefore, a fair trial, and a judgment of conviction must be reversed and a new trial ordered.

4. EVIDENCE—ERRONEOUS ADMISSION OF INFORMATION PRESENTED TO COMMITTING MAGISTRATE UPON TRIAL OF AN INDICTMENT.

It is reversible error to admit, against objection, upon the trial of a defendant indicted for a crime, the information presented to a police magistrate in order to procure a warrant for the arrest of the defendant and others, where it was not only hearsay as to the defendant, because no attempt had been made to comply with section 8 of the Code of Criminal Procedure, and the defendant never had a hearing before the magistrate with the right to cross-examine the affiant, but it also tended to arouse prejudice against the defendant and sympathy for the complaining witness.

5. SAME—WHEN SUCH ERROR IS NOT RENDERED NUGATORY, UPON APPEAL, BECAUSE RECORD DOES NOT SHOW THAT INFORMATION WAS READ TO JURY.

A contention that the admission of such information and affidavits does not constitute reversible error, because the record does not show that they were read to the jury, is untenable, since the contents of the information and affidavits are presumed to have come to the knowledge of the jury, where the contrary does not appear from the record; having been offered in evidence, received under objection, marked as an exhibit and printed *in extenso* in the appeal book, if they were not actually read to the jury or commented upon before them, it was incumbent upon the district attorney to have the case settled so as to show that fact.

People v. Wolf, 107 App. Div. 449, s. c. *supra*, p. 450, reversed.

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered September 29, 1905, which affirmed a judgment of the Court of General Sessions of the Peace in the county of New York, rendered upon a verdict convicting the defendant of the crime of abduction.

The date when the defendant is alleged in the indictment to have committed the crime of abducting Katie Garfinkel, a female under the age of 18 years, for the purpose of prostitution, is May 17, 1904. Upon the trial a serious question of fact arose out of discrepancies and conflict in the testimony of the wit-

nesses for the People as to whether the complainant was within the age required by the statute in order to make the act charged a crime. (Penal Code, § 282, par. 1.)

The assistant district attorney in opening the case, after reading the statute and explaining the nature of the crime, proceeded as follows: " Now Katie Garfinkel is a little girl who was born September 26th, 1888. . . . She never knew who her father was; she was a bastard; her mother died in childbirth, in giving birth to her. She was adopted by her mother's sister. When she was five years old that mother's sister died and the child was without a blood relative. The mother's sister's husband brought the child to America and took care of it until she was eleven or twelve years old. He married again, but the child, I believe, continued to live with him or went to live with another relative here in town. At eleven or twelve years of age she falsified her age in order to obtain employment."

At this point the counsel for the defendant interposed and objected to the statement that at eleven or twelve years of age the complainant falsified her age in order to obtain employment. The objection was overruled and an exception taken. Thereupon the prosecuting officer continued: " She went to work in one of our dry goods stores and she finally went to work in Simpson & Crawford's. She worked there, I believe, about two years until the 7th of May, until one of the early Saturdays in May of this year. She had become acquainted, through his coming into that store, with a man named Robinson. On that Saturday night Robinson met her."

Here the counsel for the defendant again interposed and objected " to the District Attorney now detailing to this jury any transaction or intimacy between the complaining witness, Katie Garfinkel, and a man by the name of Robinson. I furthermore object to his making any statement to this jury of anything regarding this girl prior to the 17th of May, 1904,

the date when it is charged in this indictment that we were guilty of abducting that girl for immoral purposes." The objection was overruled and an exception taken.

The assistant district attorney, resuming, said: " On this Saturday night she left Simpson & Crawford's a virgin. She went with Robinson to some restaurant. Sunday she was not a virgin." The defendant's counsel objected to this statement, and asked the court to strike it out and direct the jury to disregard it, on the ground that she was not indicted for anything that happened between the complaining witness and a man named Robinson. The objection was overruled and an exception noted.

The assistant district attorney then said: " On Sunday morning she was ruined. She was taken to a flat kept by a man named Hirschkovitz." The defendant's counsel objected to this statement and asked the court to instruct the jury to disregard it, but the objection was overruled and the defendant excepted.

Thereupon the court said: " I would suggest, Mr. House, that you make a memorandum as the district attorney proceeds and when he finishes you may move to have such matter as you desire stricken out and the jury instructed to disregard it." The counsel for the defendant consented, but requested that the minutes should show that the practice was suggested by the court, and the assistant district attorney then completed his address without further interruption. Among other things he said: " After her ruin on the Saturday night, Robinson telling her that he was going to take her to his mother's and marry her, he took her to the flat of a procurer named Hischkovitz; there she met a man named Altman, who was another of the same type. She felt that she could not go home; there were no blood relatives to forgive her at home. The only thing that had come to her in life, her virtue, was taken from her. Hirschkovitz and his wife appeared to be friendly with her and willing to assist her. They shielded her under their roof for a week while they

were breaking down what remained of the moral structure of that child. Altman slept with her night after night at Hirschkovitz's flat. . . . The pimp, Altman, has confessed and pleaded guilty. Twelve men have looked Hirschkovitz in the face and said ' Guilty,' and he is not here. Now comes the last act when twelve men are asked to pass upon the guilt or innocence of the woman who finally received the fruit of the depravity of the pimp and the procurer . . . The pimp, who has pleaded guilty, if it is necessary and you desire to hear him, I will put upon the stand and he will rehearse his own perfidy before you."

At the close of the opening the defendant's counsel asked the court to discharge the defendant upon the ground of a mistrial because the district attorney had " gone beyond what he was permitted to go into in opening this case to the jury." He continued as follows: " We object, first that the District Attorney in his opening address had no right to refer to any transactions between the girl Katie Garfinkel, who is the complaining witness in this case, and one Robinson, resulting in the seduction of the girl Garfinkel by Robinson.

" We object to the declaration on the part of the District Attorney that for the week following the alleged abduction of the girl by Robinson the Garfinkel girl was at the house of Mr. and Mrs. Hirschkovitz, and that Mr. and Mrs. Hirschkovitz were engaged during that week in breaking down what was left of the moral character of the Garfinkel girl.

" We also object to the statement on the part of the District Attorney that during the week the Garfinkel girl was in the house of Mr. and Mrs. Hirschkovitz, Altman, the pimp, slept with her every night.

" We also object to the statement of the District Attorney that a jury of twelve men of this county have looked Hirschkovitz in the face and convicted him of participating in the abduction of this girl.

"We also object to the declaration or statement on the part of the District Attorney that Altman, the pimp, who was engaged with Hirschkovitz in breaking down the moral character of this girl has pleaded guilty to the abduction charged against this defendant."

These objections were made upon the ground that " all this story . . . was before the day set out in the indictment . . . and cannot have anything to do with this case, other than to arouse the passions and inflame the minds of this jury against this defendant." The trial judge declined to interfere and an exception was taken, but in making this ruling he added: " I instruct the jury at this time to disregard any statement that was made by the District Attorney as to the conviction of Hirschkovitz and the plea of guilty offered by Altman."

The District Attorney thereupon remarked: " I wanted to show that Your Honor, to show why I did not produce Hirschkovitz here as a witness." The court said: " You may show that at the proper time. I do not hold now that you may not show it, but at this time the jury are instructed to disregard it." The defendant's counsel objected to the modification as made by the court and renewed his motion, but it was denied and an exception was taken, " based upon each and every ground laid as a foundation and basis for the motion."

No witness was called by the defendant, and just before the People rested the District Attorney said: "I now offer the record in the Magistrate's Court in the case of the People against Sadie Wolf. I offer it simply because I want to comment on one or two facts which are shown by it—not evidence as shown by the affidavits or anything of that kind—in my summing up." This was objected to upon various grounds, but the court received it as " a part of the record and the same as if they were offering the indictment in the case." The defendant excepted.

The record thus offered was in the nature of a criminal in-

formation presented to a police magistrate in order to procure a warrant for the arrest of the defendant and two others, Hirschkovitz and Altman, who were not indicted with her. It consisted of four affidavits, in one of which Katie Garfinkel swore that she would be sixteen years of age on the 26th of September, 1904. The affidavit entered fully into the relations of herself and Robinson, and among other things stated the following: " On or about the 7th of May, 1904, Robinson left the store of said corporation with me at about two o'clock in the afternoon, and it being a very warm day, said that he wanted to get something to drink, and asked me to go with him. We went to a hotel on the corner of 9th Street and 3rd Avenue. He asked me what I wanted to drink, and I said that I wanted lemonade. A drink that looked like lemonade was brought to me and I lost consciousness. All that I remember is that I felt Robinson drag me into the room and shut the door. When I awoke from the stupor induced from what I had had to drink I found myself in a room alone and found that I had been ravished." She also stated that Altman ravished her several times; gave her a venereal disease, and on the 17th of May, 1904, telling her that he would take her to a hospital for treatment, took her to a disorderly house kept by the defendant; that the defendant took away her clothes by force, and not only compelled her to remain in the house, but to submit to acts of sexual intercourse with men under the threat that she would have Altman beat her if she did not submit. The affidavit contained other statements, but they are too gross to repeat.

There was a long affidavit from Reardon, the arresting officer, and a shorter one from Harris Hornstein, who swore that Katie Garfinkel was crying all the time she was in the house of the defendant. Finally there was an affidavit of Paul Garfinkel, the foster father of Katie, who swore, among other things, that she was 15 years of age and would not be 16 until September, 1904.

The trial judge began his charge as follows: " In the consideration of this case you must set aside whatever impressions may have been made upon you by any statements either of the District Attorney or of counsel for the defense that were not borne out by the evidence in the case, and also remove whatever impressions may have been created by any testimony that was offered by either side and rejected by the court, or any testimony that was attempted to be offered, or any testimony that was stricken out by the court. In other words, gentlemen of the jury you are to determine this case upon the evidence admitted by the court and upon such evidence alone."

The jury found the defendant guilty and the court sentenced her to imprisonment for the term of seven years. Upon appeal to the Appellate Division the judgment of conviction was affirmed, two of the justices dissenting, and the defendant now comes here.

Frederick B. House, Maurice Meyer and Edward Weiss for appellant. The remarks of the district attorney, both in his opening and closing addresses to the jury, were entirely irrelevant to the issues, and were calculated to inflame the minds and arouse the passions and prejudice of the jury, and were not rebuked by the trial court, nor their continuance stopped when objected to by the defendant, and they constituted an invasion of the defendant's right to a fair and impartial trial. (People v. Bissert, 71 App. Div. 118; People v. Fielding, 158 N. Y. 546; Bagully v. M. J. Assn., 38 App. Div. 522; Halpern v. N. E. R. R. Co., 16 App. Div. 90; People v. Mull, 167 N. Y. 247; People v. Greenwall, 115 N. Y. 520; People v. Brooks, 131 N. Y. 321; People v. Davey, 179 N. Y. 347.) The trial court erred in allowing the information made against the defendant in the Magistrate's Court to be introduced in evidence. (Connolly v. B. H. R. R. Co., 179 N. Y. 7.)

William Travers Jerome, District Attorney (Robert C. Taylor of counsel), for respondent. The remarks of the counsel for the prosecution in his opening presented no error, but if they did such error was cured by the court's direction to the jury to disregard all remarks of counsel and to decide the case upon the evidence admitted by the court and upon that evidence alone. (Dimon v. N. Y. C. & H. R. R. R. Co., 173 N. Y. 356; People v. Smith, 180 N. Y. 125; People v. Brooks, 131 N. Y. 321; People v. Hallen, 48 App. Div. 39; People v. Mahoney, 73 Hun, 601; People v. Van Zile, 73 Hun, 534; People v. Flanagan, 22 App. Div. 516; People v. Sherlock, 166 N. Y. 180; People v. Doody, 172 N. Y. 165; People v. Conklin, 175 N. Y. 333.) There was no error in allowing the information to be introduced in evidence. (People v. Marvin, 79 Hun, 310; People v. Lewis, 9 N. Y. Cr. Rep. 340; People v. Carpenter, 102 N. Y. 238; Hope v. People, 83 N. Y. 418.)

VANN, J.: An unfair trial, especially in a criminal case, is a reproach of the administration of justice and casts grave responsibility not only upon the prosecuting officer but also upon the trial judge. However strong the evidence against the defendant may be, if she did not have a fair trial, as shown by the rulings of the court subject to proper objections and exceptions, the judgment of conviction should be reversed and a new trial ordered so that she may be tried according to law. We have repeatedly laid down the rule governing prosecuting officers in addressing the jury and to govern trial judges also in their duty relating to the subject. We have repeatedly admonished both, the former at times with severity and the latter more mildly, not to depart from that rule, but our admonitions have not always been regarded, although they were followed by a reversal of the judgment involved, founded solely on the improper remarks of the prosecuting officer and the failure of the trial

judge to do. his duty in reference thereto. (People v. Mull, 167 N. Y. 247, 15 N. Y. Crim. 490; People v. Fielding, 158 N. Y. 542, 14 N. Y. Crim. 34.)

A fair trial is a legal trial, or one conducted in all material things in substantial conformity to law. The defendant did not have a fair. trial, for the trial assistant, who did not argue the appeal before us, in his opening address to the jury stated ominous and startling facts which he should have known he could not prove. The trial judge allowed and sanctioned continuous departures from the law by the assistant district attorney, although he should have known that it was his duty to prevent them, even of his own motion without suggestion from the defendant's counsel. It was his duty not only to warn the district attorney to desist, but also, if he continued, to rebuke him and punish him for contempt if necessary to prevent further infraction of the law.

The general rule is that in opening a case no fact should be stated unless it is material and competent and, hence, proper to be proved, subject, however, to reasonable latitude where the law upon the subject is not so elementary that every lawyer should know it. Crimes, not charged in the indictment, committed upon the person of the complaining witness by parties other than the defendant who were neither indicted with her nor connected with her in any way so far as those crimes were concerned, are not material or competent for any purpose. They cannot be proved and they should not be stated, for they tend to arouse sympathy for the complainant and prejudice against the defendant not arising out of the evidence. Of what use is the rule that jurors must not listen to conversations out of court in relation to the case, or read newspapers containing an account of the transactions involved, if the district attorney, with all the influence of his official position, is permitted to make statements of facts to them in court which it is the very object of rules of evidence to exclude from their consideration?

Neither the district attorney nor the learned trial judge, in view of the responsible positions occupied by them, can consistently claim he did not know that the People in prosecuting the defendant for abduction could not prove that Robinson and Altman had previously ravished the complainant. The defendant was not indicted for rape, or seduction, or for a conspiracy to commit either of those crimes and no one was indicted with her. So far as the district attorney stated or as subsequently appeared from the evidence, the defendant never heard of the complainant until after all these wrongs had been committed upon her. No claim was made in the opening address of concert of action in this regard, or that the defendant ever knew Robinson, or had heard of his atrocious conduct, or that she knew or had heard of the outrages committed by Altman and Hirschkovitz before the girl was taken to her house. She did not know Altman, as he testified, when called by the People, until May 17, 1904, the date of the alleged abduction. He had never been to her house before that day. Indeed, the District Attorney now claims that the defendant could not have been injured even by proof of the misdeeds of these men, because they were perpetrated before the crime alleged in the indictment, and tended to relieve her of the odium of abducting a pure girl, a claim which we do not care to notice, except for the admission it implies. There was no connection shown or claimed at the trial between the defendant and these men or any one of them, until after they had done their worst to the unfortunate complainant.

The assistant district attorney should have known that he could not prove that Hirschkovitz and his wife, while shielding the complainant under their roof for a week, were engaged in breaking down what remained of the moral structure of the child, because the defendant had nothing to do with it and knew nothing about it. No legal responsibility rested upon her for that act.

But, assuming that all this did not constitute legal error owing to the charity which may be indulged in on account of a mistaken view on the part of the prosecuting officer as to the competency of the evidence and on account of his belief that he might be able to connect the defendant with these facts, it is clear that on no possible theory could he prove that Altman and Hirschkovitz had been convicted, and, hence, he had no right to tell the jury that they had been or to say to them in immediate connection with that statement that "now comes the last act when twelve men are asked to pass upon the guilt or innocence of the woman who received the fruit of the depravity of the pimp and the procurer." The court did not cure the error by instructing the jury to disregard the statement, for immediately thereafter the district attorney said he wished to prove the fact in order to show why he did not produce Hirschkovitz as a witness and thereupon the court remarked: "You may show this at the proper time. I do not now hold that you may not show it, but at this time the jury are instructed to disregard it." The instruction to disregard should not have been halting and doubtful but absolute and final. If Altman could be produced, as he was produced by the People during the trial and as the district attorney assured the jury he would be if they so desired, why not Hirschkovitz? The defendant could not produce him, for he had been convicted of a felony, but the People could. It is now, and for nearly a century has been, the law that a writ of *habeas corpus ad testificandum* cannot be issued to bring up a prisoner confined under sentence for a felony, "except where the application is made, in behalf of the People, to bring him up as a witness on the trial of an indictment." (Code Civ. Pro. §§ 2008, 2011; 2 R. S. [1st ed.], 559.) The suggestion that the statement was made to account for the non-production of Hirschkovitz seems to us frivolous, in view of the statutes cited and the fact that neither party was called on to produce as a witness

one so situated that he could not be adequately punished if he refused to testify and when no presumption could arise against either party for not calling him. Yet upon the trial the district attorney offered in evidence the record showing the conviction of Hirschkovitz, stating that his only purpose was to show that Hirschkovitz was within the call of the defendant. The objection of the defendant thereto was sustained without comment and the error in opening thus demonstrated and emphasized. The offer of this record with a statement of what it was, in the hearing of the jury, is like " the practice of asking a question that counsel must be assumed to know cannot be answered " which we recently condemned as " highly reprehensible." (Cosselmon v. Dunfee, 172 N. Y. 507.)

Nor were these errors cured by the instructions of the trial judge in his charge, because they were too general and too late to make it reasonably certain that the unwarranted statements did not affect the result. While in most cases it is within the power of the court to counteract the effect of rash remarks, " either by prompt rebuke or by instructing the jury to disregard them, or better, by both methods," the instructions should be so specified that the jury cannot fail to understand their duty with absolute certainty. (People v. Mull, 167 N. Y. 247, 255, 15 N. Y. Crim. 490, 498.) In this case, as in the cases cited, " the remarks of counsel passed without rebuke," and substantially without dissent, as is apparent when the whole record is read together. It is true that the district attorney was not allowed to prove his prejudicial assertions, but he told the jury he would prove them, and although the defendant objected, the court disregarded the objection and thus sanctioned the statement. Even then, if the court had carefully and specifically gone over the several statements and had told the jury clearly and emphatically that it was their duty to pay no attention to them, we are not prepared to say that the error would not have been cured.

No such course was taken, however, and the bare instruction, made several days after the statement, to " set aside whatever impressions may have been made upon you by any statements either of the district attorney or of counsel for the defense that were not borne out by the evidence," was clearly insufficient.

The only excuse for the injustice, and we think it has as much force in this case as it can have in any, is that the defendant is apparently guilty of a horrible and detestable crime. But why she should be tried at all unless she is tried fairly and in accordance with law? If her guilt is so clear, why should unwarranted means be used to secure a conviction? Juries do not halt over their duty in such cases, but are swift to convict when the evidence permits. In this case above all others it is unnecessary to go beyond the law, and indeed it can never be necessary in any case. Why should court and counsel violate the law in order to enforce it? What a pernicious example is presented when such officers, intrusted with the most important duties, in attempting to punish the guilty, are themselves guilty of departing from the law. Charity cannot extend its presumption to shield either in this case without also presuming that both were ignorant of the law. It may be that this warning will be disregarded as others have been, but it will be well for district attorneys and trial judges to remember that errors, such as are now complained of, if raised, as they were in this case, by sufficient objections and exceptions, will, upon appeal to this court, result in the reversal of the judgment of conviction. In no other way can the command of the law be observed and the rights of innocent persons charged with crime be adequately protected. It is not to shield the guilty but to protect the innocent that courts are steadfast in upholding rules, in force for generations, by which it may be lawfully determined who are guilty.

While there is a difference of opinion in relation to the subject thus far discussed, we all agree that the criminal informa-

tion against the defendant and others was incompetent evidence. It was hearsay as to the defendant, for no attempt was made to comply with section eight of the Code of Criminal Procedure. She never had a hearing before the magistrate with the right to cross-examine the affiants, because the indictment came too soon. The effect was not only to show that the complainant, her foster father, who was the main reliance of the prosecution upon the question of age, and two other witnesses told the same story right after the alleged occurrence that they told upon the trial, but it also tended to further arouse prejudice and sympathy, which the law is careful to exclude from all trials, and especially from those involving liberty or life. (People v. Davey, 179 N. Y. 345, 348, 18 N. Y. Crim. 528, 531.) Whether the complainant was under the age of eighteen at the date of her alleged abduction was a question of fact, upon which the jury could have found either way. The self-serving declarations appearing in the affidavits of her father and herself that she was but fifteen and would not be sixteen until September, 1904, did not constitute legal corroboration and were neither competent for that purpose (Connolly v. Brooklyn Heights R. R. Co., 179 N. Y. 7) ; nor as part of the record, " the same as if they were offering the indictment," as the trial judge declared in admitting them. The information was an accusation but not like the indictment, and an accusation neither proves itself nor helps prove another accusation. We agree with the dissenting justices below that " the record of the proceedings before the police magistrate was not a part of the record of the trial and had nothing to do with it, nor was it in effect the same as an indictment." The evidence was incompetent for any purpose, and the harrowing details of injuries done the complainant by persons unknown to the defendant at the time, but who soon became connected with her, were all calculated to arouse prejudice against her.

It is, however, claimed that the record does not show that these affidavits were read to the jury. What were they put in for then? The district attorney in offering them said that when summing up he wanted to comment on one or two facts shown thereby, but he could not properly comment upon facts thus shown unless they were in evidence. As the contrary does not expressly appear, the contents of the affidavits are presumed to have come to the knowledge of the jury, because they were offered, received under objection, marked as an exhibit and are printed *in extenso* in the appeal book. If they were not actually read to the jury, or commented upon before them, it was incumbent upon the district attorney to have the case so settled as to show that fact, for the evidence went in on his offer and against the objection of the defendant.

We close our review by repeating the apt language of Judge WERNER in a recent case, although we regard the errors in the case before us as substantial, rather than technical: " It has come to be one of the accepted maxims of our jurisprudence that appellate courts will not be astute to find mere technical errors upon which to reverse judgments. There are cases, however, in which apparently technical errors may be so prejudicial as to produce the gravest injustice. This may be particularly true of a case in which a defendant, accused of an abhorent and detestable crime, finds himself confronted at the very threshold of the court room, with that subtle, pervasive and almost ineradical prejudice which the bare charge of such a crime may engender against him, in the minds of those who are to pass upon his guilt or innocence. This lurking possibility may become almost a probability when the charge is one which is calculated to arouse the parent to the dangers which beset his children in their necessary daily intercourse with those outside of the family circle. In such cases reason needs to be safeguarded from prejudice by everything that caution and justice can suggest, and courts should be firm and

explicit in impressing upon district attorneys the necessity for strict adherence to rules of evidence and propriety of conduct so that jurors may, as far as possible, be unbiased and impartial." (People v. Davey, 179 N. Y. 345, 347, 18 N. Y. Crim. 528, 530.)

The judgment of conviction should be reversed and a new trial ordered.

HAIGHT, J.: I concur for reversal of the judgment herein solely upon the ground that the court erroneously received in evidence on the offer of the district attorney, the affidavits, filed before the magistrate, giving the criminal information against the defendant upon which the warrant was issued.

It may be that the district attorney of New York and his assistants deserve the severe chastisement given in the opinion of this court, but I entertain a different view and wish to expressly dissent from that portion of the opinion. I had always supposed that it was not only the privilege but the duty of the district attorney, upon the trial of a person charged with crime, to make a statement to the jury of the facts which he intends to prove, and that reversible error could not be founded upon such statement, even though he may be disappointed in the evidence that he expected to produce or had it ruled out by the court as incompetent. Based upon what has been understood to be the ruling of this court, attorneys in defending persons charged with crime have in many instances adopted the practice of interrupting the district attorney in his closing argument to the jury, charging unfairness, impropriety and incorrectness of nearly every statement that he may make, and require a ruling of the court thereon, thereby practically preventing him from being able to present a logical and connected argument in support of a conviction. It is now proposed to go a step further and place him under still further restrictions. He is required to state the facts

which he expects to prove, but in stating those facts he is to be met with objections as to the competency and materiality of the evidence, and that is to be ruled upon during his opening. In other words, the case is to be tried, so far as the admissibility of evidence is concerned, during the opening statement of the district attorney, thus preventing him from giving to the jury a connected chain of events upon which he may rely for a conviction. The time has come when in a criminal trial the defendant's counsel insists that every word uttered by the district attorney shall be taken by the official stenographer and made a part of the record for the purpose of catching some expression that may escape his lips, which to the ears of this court may sound inappropriate or unfair, and thus afford us an opportunity to swing the whip and give him a lecture. Such lectures have already been given in a number of the opinions written during recent years by the judges of this court, and still we have been careful to refrain from reproving counsel defending criminal actions for indulging in similar expressions or of imposing upon them like restrictions in conducting their defense; and yet the attempt of counsel defending to shift the trial from his own client to the district attorney, and thereby create an impression in the minds of the jurors that the district attorney is unfair and that his client is being persecuted, has been often indulged in and too often has been successful. I think we have gone far enough, if not too far, and I am opposed to imposing upon the district attorney the restrictions now proposed. I do not think that we should surround the prosecution of criminal trials with so many technical questions, as to make it practically impossible to avoid trivial errors and to convict a guilty person where he is fortunate enough to be defended by a bright attorney who is willing to interpose technical questions.

The defendant was indicted for the crime of abducting a young girl under the age of eighteen years for the purpose of

prostitution.    This girl was to be the chief witness for the prosecution, and much depended upon her credibility.    The district attorney, therefore, in stating the facts that he expected to prove, gave a brief history of her from the time of her birth down to the time of her abduction.    This included the date of her birth, age, parentage, and the manner in which she had gained her livelihood.    He stated that she was not pure and innocent at the time of her abduction, that she had had intercourse with one Robinson, and had lived with one Hirschkovitz, and night after night had had connection with one Altman.    It is now contended that this statement was improper; that the district attorney ought to have known that the evidence was incompetent, and that because of this statement a new trial should be granted.    I do not think so.    It has always been recognized as proper to give a brief history of a witness sworn upon a trial, in order that the jurors may be advised to some extent with reference to the character and disposition of the person, to the end that they may determine the amount of credit that they should give to the testimony.    It is true that the previous chastity of the girl abducted is not an essential element of the crime if she be under the age of eighteen, and yet it becomes a proper and important subject of inquiry upon the gravity of the crime and the extent of punishment that should be inflicted.    If, therefore, the district attorney had rested his case upon the showing that she was abducted under the age of eighteen, leaving the inference that she was then pure and undefiled, the defendant would undoubtedly have produced the evidence showing her previous acts of unchastity in mitigation of the charge and then make the claim that the district attorney had attempted to deceive the jurors by withholding the evidence of her previous character.    The district attorney was not required to subject himself to such an accusation.    He had the right to show the abduction and then by

concession or evidence show what there was of her bad character in order that the jurors may be possessed of all the facts.

I do not think that the previous conviction of Hirschkovitz and Altman was material upon the issues involved in this trial. But inasmuch as the defendant knew nothing of the offense committed by these men, it is not apparent to me how the defendant could have been prejudiced by the statement that they had been convicted or had pleaded guilty. We should assume that the jurors were possessed of ordinary understanding and intelligence, and certainly they could not have been prejudiced against the defendant by an independent transaction between other persons about which she knew nothing. But it is said that the district attorney ought to have known that the evidence of the conviction of these men was not proper. Assuming this to be so. Errors, however, are not predicated upon what the district attorney knows or does not know. The trial judge is the officer who is responsible for the conduct of the trial, and it is his rulings that are brought up for review and upon which errors of law are based. After the opening of the district attorney the defendant's counsel asked the court to discharge the defendant upon the ground of a mistrial for the reason that the district attorney had made the statement alluded to. Of course it was the duty of the court to deny the motion, as he did, but in denying the motion he expressly stated, " I instruct the jury at this time to disregard any statement that was made by the district attorney as to the conviction of Hirschkovitz and the plea of guilty by Altman." And, again, in beginning his charge he stated to the jury as follows: " In the consideration of this case you must set aside whatever impressions may have been made upon you by any statements either of the district attorney or of counsel for the defense that were not borne out by the evidence in the case, and also remove whatever impressions may have been created by any testimony that was offered by either side and rejected by the court, or

any testimony that was attempted to be offered or any testimony that was stricken out by the court. In other words, gentlemen of the jury, you should determine this case by the evidence admitted by the court and upon such evidence alone." It appears to me that the trial judge fairly and properly presented this case to the jury, so far as this branch of the case is concerned, and that he fully performed his duty in this regard. But it is now claimed that he should have done more and it is suggested that he might have committed the district attorney for contempt of court, but this would have deprived the People of the officers selected by them to prosecute the trial and might have resulted in the discharge of the defendant. While the trial court may be vested with such power, certainly it should be exercised only in extraordinary cases, and I doubt if there is a single member of this court who would have approved of such action by the trial judge had he resorted to such punishment. In his opening remarks the district attorney referred to Altman and called him a vile name. This may have been coarse and vulgar. I thing it was in bad taste, but it did the defendant no harm, it would rather tend to prejudice the jurors against the officer himself. It certainly does not present an error of law which calls for a reversal. For these reasons I confine my vote for reversal to the ground first stated.

CULLEN, Ch. J., O'BRIEN, BARTLETT and WERNER, JJ., concur with VANN, J.; GRAY, J., concurs with HAIGHT, J., for reversal solely upon the ground of the error committed by the trial court in admitting in evidence the record of the criminal information filed with the Magistrate's Court.

Judgment of conviction reversed, etc.