## WEBB *v.* STATE.

### Opinion delivered May 29, 1922.

1. HOMICIDE—SUFFICIENCY OF EVIDENCE.—Evidence tending to show that defendant struck the deadly blow with a gun barrel without provocation, with malice aforethought, and after deliberation, *held* to sustain a verdict of murder in the first degree.

2. CRIMINAL LAW—HARMLESS ERROR.—Where, in a prosecution for murder, a witness for defendant was allowed to testify without objection that defendant had previously been convicted of resisting an officer, it was not prejudicial error, on cross-examination of defendant, to permit defendant to be interrogated concerning such conviction, where defendant detailed exculpating circumstances concerning the conviction.

3. HOMICIDE—FAILURE TO INSTRUCT AS TO MODE OF PUNISHMENT.— In a prosecution for murder, where no request therefor was made, the court's failure to instruct that the jury, on finding defendant guilty of murder in the first degree, might fix his punishment at death or life imprisonment, was prejudicial error, where the jury found defendant guilty of murder in the first degree without fixing the punishment.

Appeal from Lafayette Circuit Court; *George R. Haynie*, Judge; affirmed.

*D. L. Purkins* and *A. H. Hamiter,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistant, for appellee. .

McCulloch, C. J. Appellant was indicted by the grand jury of Lafayette County for the crime of murder in the first degree, and on the trial of the case the jury rendered a verdict finding appellant guilty of murder in the first degree, as charged in the indictment, and judgment was rendered on the verdict for the imposition of the punishment of electrocution.

Appellant is a negro, and the charge against him is the killing of another negro named Elmond Green by striking him with a gun-barrel. The killing occurred at night near the home of a negro woman named Mary Ford, where there was a small social gathering attended by a small party of negroes of both sexes.

Green and one of Mary Ford's daughters, Leona, decided to attend a social gathering at another place, and went out in front of Mary Ford's house to get in Green's buggy. The girl testified that, after she got into the buggy, Green walked around to unhitch the horse, and that she heard the sound of blows, and thinking that Green was striking the horse, she called to Rufus Huie, another negro, who was standing on the porch, to come out and make Green stop beating the horse. Huie ran out, and when he reached the place he discovered that appellant had been striking Green. When Huie ran out there, appellant commanded him to stand back, and threatened to shoot. Another witness says he heard Huie state, after he had gone out to the place of the killing, that "Bill Webb has killed Elmond," and that appellant exclaimed, "God damn you, this is Mr. Bill Webb tonight." A pair of gun-barrels were found at the spot, with blood on the breech end.

The evidence tends to show that appellant was secreted in the bushes near the place where Green's horse was hitched, and that he was lying in wait for Green.

There is other evidence which establishes the fact that appellant and his wife had separated, and that there was some trouble between them on account of Green's attention to appellant's wife.

Appellant himself testified that he went to Mary Ford's house that night to pay a small sum of money that he owed to one Nesbit, and that when he got near the house he heard a conversation between Green and his (appellant's) wife, and heard Green threaten to whip her, when he (appellant) interposed, and that Green then thrust his hand in his bosom as if to draw a weapon.

Appellant testified that he did not strike Green with a gun-barrel, but struck him with a stick.

The evidence was sufficient to sustain the verdict for murder in the first degree.

The evidence tends to show that appellant was lying in wait, and that he struck the deadly blows with the gun-barrel, and did so without any provocation, with malice aforethought and after deliberation.

Appellant introduced as a witness A. B. Knight, a white man, in whose family appellant's wife was cooking, for the purpose of proving that appellant and his wife had not separated but were on good terms, and that appellant visited his wife frequently at the home of witness. On cross-examination, the prosecuting attorney drew out from the witness Knight that prior to that time he had paid a fine for appellant upon the conviction of the latter for resisting an officer. On re-direct examination, appellant's counsel re-examined Mr. Knight on that subject and had him state the occasion and the person with whom appellant was having a difficulty when he resisted an officer. There was no objection made to this testimony of Mr. Knight.

Appellant testified in his own behalf, and on cross-examination the prosecuting attorney was permitted to interrogate appellant, over the objection of his counsel, concerning his conviction of the offense of resisting an officer. The court overruled the objection, and appellant

testified concerning the circumstances under which he resisted the officer. Appellant admitted that he had entered a plea of guilty, but his explanation of the incident was to the effect that his conduct on the occasion named did not amount to resisting an officer. The ruling of the court on this subject is now assigned as error.

We have often held that a defendant may, on cross-examination, be interrogated concerning any of his past conduct which might affect his credibility as a witness. It is unnecessary to determine whether or not the present instance comes within that rule, for appellant's own statement was more favorable to himself than the other witness, Mr. Knight, who did not pretend to detail the exculpating circumstances attending the alleged offense of resisting an officer, but merely stated that appellant had been convicted, and that he (witness) had paid the fine. This testimony went in without objection, and we cannot see that it added anything prejudicial to appellant to permit him to make an explanation of the circumstances according to his own version of them. Appellant did not ask for the exclusion of Knight's testimony, and, as before stated, we cannot see that his own testimony would make any more unfavorable impression than that made by the testimony of Knight.

We conclude, therefore, that there was no prejudice in this ruling of the court, without deciding whether or not it was competent to draw out from appellant on cross-examination the fact that he had been guilty of the crime of resisting an officer—an offense which might, or might not, involve moral turpitude so as to affect the credibility of the witness.

The form of the verdict rendered by the jury was as follows: "We, the jury, find the defendant guilty of murder in the first degree. J. T. Kennedy, Foreman," and, as before stated, the court rendered judgment for the extreme penalty of electrocution.

There is a statute fixing the punishment for murder in the first degree at electrocution, but there is another statute which reads as follows:

"The jury shall have the right in all cases where the punishment is now death by law, to render a verdict for life imprisonment in the State Penitentiary at hard labor." Crawford & Moses' Digest, § 3206.

We have decided that the statute just quoted did not repeal the old statute fixing the penalty at electrocution, but merely gave the power to the jury to reduce the punishment to life imprisonment, and that a verdict finding the defendant guilty of that crime, without fixing the punishment at imprisonment, called for a judgment for the extreme penalty of electrocution. *Kelly* v. *State,* 133 Ark. 261.

In the present case it appears from the record that the court did not instruct the jury as to the form of the verdict and was not asked to do so. It is now contended by appellant's counsel that it was error for the court to fail to give such an instruction informing the jury that it was within their power to reduce the punishment to life imprisonment, and that an order ought to be entered here reducing the punishment in order to eliminate the error.

We have steadily adhered to the rule that it is not error for a trial court to fail to give an instruction on a given subject unless the court is requested to do so. *Allison* v. *State,* 74 Ark. 444; *Scott* v. *State,* 77 Ark. 455; *Mabry* v. *State,* 80 Ark. 345; *Hobbs* v. *State,* 86 Ark. 360; *Snyder* v. *State,* 86 Ark. 456; *Ray* v. *State,* 102 Ark. 594. We have applied this rule in cases where the court had failed to give instructions on the lower degrees of homicide.

There is nothing in the statutes of this State which requires a court to give instructions unless requested by the parties to do so. The only statute on the subject reads as follows: "When the evidence is concluded the court shall, on motion of either party, instruct the jury on the law applicable to the case." Crawford & Moses' Digest, sec. 3179.

We perceive no reason why the rule announced above should not be applied to the failure of the court to give an instruction concerning the power of the jury to reduce the punishment for murder in the first degree to life imprisonment. It rests upon the same principle as the failure to give any other instruction of law applicable to the issues involved in the trial. We believe it to be good practice for the court in all murder cases to inform the trial jury that they have the power to fix the punishment at life imprisonment, but there is no error in the court's failure to do so unless attention is called to it by a request for an instruction on that subject.

Affirmed.

HART, J., (on rehearing). Counsel for appellant contends that, inasmuch as the statute gives the jury an alternative right to fix the punishment in capital cases at death or life imprisonment in the State Penitentiary, the court erred in not charging the jury with respect to the punishment. In this contention we think counsel are correct, and that the motion for a rehearing should be granted. It is true that this court has set its face against errors which do not affect the merits, but in a capital case justice requires that the jury be told what duties the statute devolves upon it to perform in the way of fixing the punishment of the accused, provided he is found guilty.

Sec. 3205 of Crawford & Moses' Digest provides that the jury shall, in all cases of murder, on conviction of the accused, find by their verdict whether he is guilty of murder in the first or second degree.

Sec. 3206 provides that the jury shall have the right, in all cases where the punishment is now death by law, to render a verdict of life imprisonment in the State Penitentiary at hard labor.

The statute provides that the jury, and not the court, shall have the right to fix the punishment, and it follows that, under such a statute, it is necessary to inform the jury of the punishment imposed by the statute in order

that it may properly exercise the right vested in it. If the court had explained to the jury the distinction and difference of penalty of murder in the first degree, the finding of the jury might have been different. By not telling the jury that it had a right to fix the punishment of the defendant at life imprisonment, the latter was deprived of a substantial right. The right to exercise the discretion under the statute was given to the jury, and the court could not exercise it.

We think this holding is in accord with the rule laid down in *Winkler* v. *State*, 32 Ark. 539. The reason for the rule in such cases is clearly expressed by Mr. Justice HARLAN in *Colton* v. *Utah*, 130 U. S. 83, as follows: "Without such recommendation the court, in the absence of sufficient grounds for a new trial, has no alternative but to sentence the accused to suffer death. While in this case the jury were instructed as to what constituted murder in the first and second degrees, they were not informed as to their right, under the statute, to recommend imprisonment for life at hard labor in the penitentiary in place of punishment of death. If their attention had been called to that statute, it may be that they would have made such a recommendation, and thereby enabled the court to reduce the punishment to imprisonment for life. We are of the opinion that the court erred in not directing the attention of the jury to this matter. The statute evidently proceeds upon the ground that there may be cases of murder in the first degree, the punishment for which by imprisonment for life at hard labor will suffice to meet the ends of public justice. Its object could only have been met through a recommendation by the jury that the lesser punishment be inflicted, and it is not to be presumed that they were aware of their right to make such recommendation. The failure of the court to instruct them upon this point prevented it from imposing the punishment of imprisonment for life, even if, in its judgment, the circumstances of the case rendered such a course proper."

So, too, in *Blair* v. *Commonwealth,* 7 Bush (Ky.) 227, it was held that the instructions to the jury were prejudicial to the defendant in not submitting to its determination whether, if the defendant was found guilty, his punishment should be death or confinement in the penitentiary.

In *Cesure* v. *State,* 1 Tex. Ct. of Appeals 19, it was held that on the trial of offenses to which alternative penalties are attached, it is the duty of the district judge, whether asked or not, to give such alternative penalties in the charge to the jury, and that an omission to do so is error.

The court said that under such a statute the question of punishment to be inflicted is a matter entirely discretionary with the jury, and is as legitimate a subject of inquiry by them as any other question involved in the case. The court further said that, in failing to give a charge submitting this question to the jury, the trial court committed a material error calculated to injure the rights of the defendant, for which a new trial should have been granted.

In *Mays* v. *State,* 143 Tenn. 443, 226 S. W. 233, the court had under consideration a statute allowing the jury, upon finding mitigating circumstances, to commute the punishment, upon conviction in capital offenses, to imprisonment for life. The court reaffirmed the rule announced in an earlier case that the language of the act clearly vested in the jury the exclusive power and authority to fix the punishment of defendants in cases where they have been convicted of murder in the first degree. The court further held that the act was mandatory.

In the case last cited the State contended that the law fixed the punishment for murder in the first degree at death, except where the jury should find mitigating circumstances, and that therefore, when a simple verdict of guilty of murder in the first degree was rendered by the jury without a finding of mitigating circumstances, the

death penalty followed by force of the law, and the act of the trial judge in imposing said penalty was but ministerial.

The court said that, under the act, the jury did not have to make any finding at all of mitigating circumstances in the sense of stating such a finding in their verdict, in order to impose less than the death penalty.

The court said further that the matter of punishment within the limits stated was one for the discretion of the jury, and that the jury might reduce the punishment if it was of the opinion that there were mitigating circumstances.

The court reaffirmed the rule that the statute committed to the jury the power of assessing the punishment and that this power was exclusive. It was held that a verdict which did not fix the punishment was a nullity, and that no valid punishment could be based thereon.

In the present case the finding of the jury might have been different, had the court explained to the jury the alternative right given it by the statute in fixing the punishment of the accused. Therefore, the majority of the court is of the opinion that, the punishment prescribed by the statute being alternative in its character, and the statute having made it the duty of the jury to exercise its discretion in fixing the punishment, it was part of the law applicable to the case, and the trial court erred in not charging the jury in regard to the discretion to be exercised by it in case the accused was found guilty of murder in the first degree.

The error can be cured, however, by reducing the punishment of appellant to life imprisonment. The sentence of death for murder in the first degree will be set aside, and the sentence reduced to imprisonment for life in the State Penitentiary at hard labor, unless the Attorney General elects within two weeks to have the judgment reversed and the cause remanded for a new trial.

McCulloch, C. J., and Humphreys, J., dissent.