THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN LUBERTO, Appellant.

Third Department, May 6, 1925.

Crimes — attempt to commit rape in first degree — arguments of counsel — prejudicial error for district attorney to state that he had sworn confession by defendant and then to refrain from offering it in evidence — evidence does not clearly establish guilt — conviction reversed.

It is prejudicial error for a district attorney on a prosecution for an attempt to commit rape in the first degree to state in his opening that he will show by written confession under the oath of the defendant that the defendant committed the crime, and then to refrain from offering the alleged confession in evidence. The district attorney should have refrained from discussing the confession until it had been received in evidence.

The evidence which shows, among other things, that the defendant was arrested and convicted before a justice of the peace, a brother of the complainant, for assault in the third degree, which conviction was subsequently reversed, does not so clearly establish the guilt of the defendant that the conduct of the district attorney can be overlooked, and, therefore, the conviction is reversed.

APPEAL by the defendant, John Luberto, from a judgment of the County Court of the county of Schoharie, rendered on the 18th day of December, 1924, convicting him of the crime of attempting to commit rape in the first degree.

*C. B. Mayham* and *Wallace H. Sidney,* for the appellant.

*Alberti Baker, District Attorney,* for the respondent.

COCHRANE, P. J.:

Mildred Lewis, seventeen years old, was walking to the home of her married sister. She left the highway near the residence of the defendant and proceeded across the fields. In climbing a line fence between the farm of the defendant and that occupied by her sister and family her clothing was caught and held by a barbed wire. The defendant had followed from the highway as he claims for the purpose of turning his cattle into a different field. He helped her disentangle her clothing and then assaulted her in a manner detailed by her, which if true leaves no doubt of the propriety of this judgment of conviction. He, admitting that he helped her over the fence, denies any improper conduct. He is corroborated by his wife and daughter who claim to have seen him assist the girl over the fence. Numerous witnesses testified to his good repute in the community where he had resided. Three days after the occurrence at the fence defendant was arrested by a State trooper who testified that the defendant immediately on his arrest admitted in detail his conduct as detailed by Mildred Lewis. This the defendant denied. To her stepbrother he said if he had known she was his sister he would not have done it. To her stepfather he said, "he didn't know what ailed him; he must have lost his head." Manifestly the evidence is such that the judgment of conviction should not be disturbed except for an incident which may well have improperly influenced the jury.

The defendant when arrested was taken before a justice of the peace who was a brother of the complaining witness, Mildred Lewis. He was there convicted of assault in the third degree and sentenced to jail. This judgment of conviction was reversed on appeal with the consent of the district attorney and the present indictment followed. At the hearing before the justice of the peace a statement of the defendant was taken under oath, reduced to writing and subscribed by him. He cannot read but presump-

tively it was read to him. In opening the case to the jury under this indictment the district attorney stated at length what had occurred before the justice of the peace and that the defendant had there signed and sworn to a statement of the facts in detail as claimed by the complainant, and concluded as follows: " We shall show you by the confession of this man by at least two witnesses, outside of this affidavit which he signed and swore to, that he committed the offense and we shall show you by this written confession of his under oath that he committed this crime on this girl in this isolated place on the 11th day of July, 1924." The district attorney afterwards called the justice as a witness and had him produce the statement which he testified the defendant had signed and sworn to before him. The statement was not offered in evidence, doubtless because under the strenuous objections of the defendant's counsel to the series of questions preliminary to its introduction the district attorney lost faith in its admissibility. Whether the rights of the defendant before the justice of the peace were properly safeguarded and whether his statement was voluntarily made within the meaning of the law so as to be available as evidence against him we do not decide, because neither the statement nor all the circumstances leading up to it are before us. But the district attorney in his opening remarks had told the jury the contents of the statement. He characterized it as a " written confession of his under oath." We do not impute bad faith to the district attorney. He undoubtedly intended to use the statement against the defendant and in the progress of the trial changed his mind. But the mischief was accomplished. If the statement had merely been offered in evidence without being characterized as a " confession " or its contents revealed to the jury and had been excluded no criticism would be justifiable. But the jury were told before they heard a word of evidence that the defendant had confessed under oath that he had committed all the acts just as claimed by the complaining witness and thus the unconscious bias against the defendant which he had doubtless by his examination of the jurors sought to exclude from the jury box was cast therein immediately on their acceptance by him as jurors. The remarks of the district attorney, surrounded by the influence of his official position, were not lost on the jury. A sworn confession of guilt fairly and voluntarily made in the course of a judicial trial must ordinarily be fatal to the defense in a subsequent trial of the person who makes such a confession. That was the condition which the jury were told here existed. Nothing was done subsequently to eliminate from their minds the impression they must have received. In *People* v. *Wolf* (183 N. Y. 464) it was said:

" The general rule is that in opening a case no fact should be stated unless it is material and competent and, hence, proper to be proved, subject, however, to reasonable latitude where the law upon the subject is not so elementary that every lawyer should know it. * * * Of what use is the rule that jurors must not listen to conversations out of court in relation to the case, or read newspapers containing an account of the transactions involved, if the district attorney, with all the influence of his official position, is permitted to make statements of facts to them in court which it is the very object of rules of evidence to exclude from their consideration? " (See, also, *People* v. *Smith*, 162 N. Y. 520.) It is true that proper latitude must be allowed in addressing a jury. Not every unwarranted statement may be seized upon as a basis for a new trial. But, as pointed out, a confession such as this was claimed to have been would naturally prove destructive of most any defense, and we think the district attorney should have refrained from discussing it until it had been received in evidence. As already intimated, he expected to use it as evidence and his good faith is not in question, but his mistake was that the decision not to use it did not precede its discussion. It remains to consider whether the guilt of the defendant has been so clearly established that we should disregard the error. We approach that question with a feeling that for the reasons stated the defendant has through inadvertence failed to receive that fair trial guaranteed him by the laws of our country. Can we then say with certainty that no injustice has been done? In answering this question it must not be overlooked that the justice of the peace, a brother of the complainant, with her testimony as well as that of the defendant before him and with the assistance of the State trooper, did not think the crime more serious than that of assault in the third degree. It may be argued that he was unfamiliar with the law. But the alleged admissions of the defendant to the stepbrother and stepfather of the complainant and all the corroborating circumstances urged by the prosecution are entirely consistent with a crime of that nature. There is room for argument that the first conviction was more nearly commensurate with the actual facts than the last conviction. If that be so there is all the more danger that the improper introductory remarks may have prejudiced the defendant. The nature of the accusation had a tendency to inflame the minds of the jury and the opening remarks unintentionally, but nevertheless potentially, must have contributed to destroy their mental poise. It may be that conceding the defendant to have committed a crime he has been found guilty of a more serious crime than he committed. The inflammatory statement of the

district attorney may easily have brought about such a result. We think under the circumstances the conviction should not stand.

The judgment of conviction should be reversed on the law and facts and a new trial granted.

All concur.

Judgment of conviction reversed on the law and facts and new trial granted.