SMITH *v.* STATE.

4297      172 S. W. 2d 249

Opinion delivered June 21, 1943.

*J. Ross Robley* and *Elmer Schoggen,* for appellant.

*Guy E. Williams,* Attorney General, and *Earl N. Williams,* Assistant Attorney General, for appellee.

McFADDIN, J. From a jury verdict of first degree murder, and a sentence of death the appellant brings this appeal. On September 25, 1942, Dolores Catherine Smith, a little girl ten years of age, left the Woodruff School building in Little Rock at 3:45 p. m. in company with a man whom witnesses identified as the appellant herein. The child did not reach her home and her mother began a search for her. The next day the appellant herein (who was married to the sister of the mother of Dolores Catherine Smith) was identified as the man who left the school with the child and who was seen with her proceeding westerly; and the defendant was arrested and imprisoned and was never released at any time thereafter.

On October 22, 1942, a hunter in a secluded spot about three miles west of the Woodruff School, found a skull, some bones, flesh, hair, clothes and shoes. Fowls,

hogs or predatory rodent animals had devoured nearly all of the flesh, but from the part left and from the bones and hair, witnesses testified that this was the remains of a white female about ten years old who had been dead about four or five weeks. The clothes and shoes were identified as those worn by Dolores Catherine Smith when she disappeared.

While the appellant was in the custody of the officers, he made a statement which he claimed was extorted from him by whipping, beating and threatening. This alleged confession will be discussed later. Naturally the disappearance of the child and the entire situation attracted much attention in the newspapers. The prosecuting attorney filed an information against the appellant charging him with first degree murder for the killing of Dolores Catherine Smith by some manner, means and instrument and weapons unknown, and on a plea of not guilty, there was a trial beginning on November 24, 1942, and continuing until November 27, 1942, when the jury brought in the verdict: ''We, the jury, find the defendant, Joe W. Smith, guilty of murder in the first degree as charged in the information.'' On that verdict, and after the overruling of the motion for new trial, the court sentenced the appellant to death; and there is this appeal.

The motion for new trial contains 29 assignments of error, and these are grouped into eight points in the argument and brief for appellant. It is unnecessary for us to discuss each of the 29 assignments of error because for two reasons the cause must be reversed; and we believe that the other grounds for assignment of error will not be present on a new trial. So we proceed to a consideration of the two reversible errors, to-wit:

I. Failure to instruct the jury on its right to fix punishment at life imprisonment.

Section 4257 of Pope's Digest of the laws of Arkansas provides: ''In all cases appealed from the circuit courts of this state to the Supreme Court, or prosecuted in the Supreme Court upon writs of error, where the appellant has been convicted in the lower court of a

capital offense, all errors of the lower court prejudicial to the rights of the appellant shall be heard and considered by the Supreme Court whether exceptions were saved in the lower court or not; and if the Supreme Court finds that any prejudicial error was committed by the trial court in the trial of any case in which a conviction of a capital offense resulted, such cause shall be reversed and remanded for a new trial, or the judgment modified at the discretion of the court.''

Under that section, we have given consideration to the point now discussed. The instructions in the case at bar appear on pages 462 to 472 of the transcript, and from a careful study of these instructions, we fail to find where the trial court ever instructed the jury that the punishment could be life imprisonment. The law is well settled in this state, that where the jury finds the defendant guilty of murder in the first degree as charged in the information and does not fix the punishment, then the law fixes the punishment at death. *Clark* v. *State,* 169 Ark. 717, 276 S. W. 849; *Bullen* v. *State,* 156 Ark. 148, 245 S. W. 493. But § 4042 of Pope's Digest provides: ''The jury shall have the right in all cases where the punishment is now death by law, to render a verdict of life imprisonment in the state penitentiary at hard labor.''

This court has repeatedly held that it is error for the trial court to fail to instruct the jury that it might fix the punishment at life imprisonment. The defendant does not have to request this instruction. It is mandatory on the trial court in a first degree murder case to advise the jury of its power to fix the punishment at life imprisonment. See *Webb* v. *State,* 154 Ark. 67, 242 S. W. 380. An examination of the original transcript and motion for new trial in the Webb case shows that no assignment of error was contained in the motion for new trial about this failure to so instruct the jury, and yet this court, speaking by Mr. Justice HART, on rehearing, said:

''In the present case, the finding of the jury might have been different had the court explained to the jury the alternative right given it by the statute in fixing the

punishment of the accused. Therefore the majority of the court is of the opinion that the punishment prescribed by the statute being alternative in its character, and the statute having made it the duty of the jury to exercise its discretion in fixing the punishment, it was part of the law applicable to the case, and the trial court erred in not charging the jury in regard to the discretion to be exercised by it in case the accused was found guilty of murder in the first degree.

"The error can be cured, however, by reducing the punishment of the appellant to life imprisonment. The sentence of death for murder in the first degree will be set aside, and the sentence reduced to imprisonment for life in the state penitentiary at hard labor, unless the Attorney General elects within two weeks to have the judgment reversed and the cause remanded for a new trial."

And to the same effect see *Crow* v. *State,* 178 Ark. 1121, 13 S. W. 2d 606, and *Williams* v. *State,* 183 Ark. 870, 39 S. W. 2d 295. On the authority of these cases, we hold, independently of the other error hereinafter mentioned, that the sentence would have to be reduced from death to life imprisonment in the penitentiary at hard labor unless the Attorney General should elect, within fifteen juridical days, to have the case reversed and remanded for a new trial.

II. Reference to the alleged confession in the opening statement by the prosecuting attorney.

In assignment of error No. 8 in the motion for new trial, it is set out: "The court erred in permitting the prosecuting attorney to discuss and detail the alleged confession of the defendant in the course of his opening statement to the jury, over the objections and exceptions of the defendant." The transcript disclosed on page 63: "While the prosecuting attorney was making his opening statement, the following occurred:

"Mr. Schoggen: Let the record show that the defendant objects to the detailing of the alleged confession of the defendant by the prosecuting attorney in his open-

ing statement, which objection being overruled by the court, the defendant saves his exceptions.

"The Court: Exceptions saved."

The court permitted the prosecuting attorney to detail the alleged confession to the jury over the defendant's objections and without any cautionary instruction of any kind by the court. If the confession had later been admitted in evidence, no error would have resulted. But the confession was not admitted in evidence. From page 184 to page 364 of the transcript (and consuming a portion of two days) the court heard testimony in chambers regarding the alleged confession, and properly held that the confession was not admissible in evidence.

The defendant, Joe Smith, swore that the officers, in an effort to extort a confession, had whipped and beaten him, and that blood came from his body and saturated his clothes; that he appealed to the deputy prosecuting attorney to give him relief from the punishment and torture to which he was subjected; and that the deputy told him that the matter was out of his hands; that later when another beating and whipping were about to begin, the defendant agreed to give a statement, which the state contended was the confession in this case. Physicians who examined the defendant testified that he had welts, bruises and contusions on his body, which could have been caused from whipping and beating. The defendant named the officers who, he said, beat him. He named the deputy prosecuting attorney to whom he appealed for protection, and the time and place where said appeal was made. The trial court three times (Tr. pp. 224, 233, 300) called on the prosecuting attorney to put the parties on the stand to disprove these statements, if false; but the prosecuting attorney did not call the parties named.

We are not saying that the defendant's statements were true; we are merely detailing what the defendant testified regarding the alleged confession. We do not live in the land of the German Gestapo. The law of our land surrounds every person accused of crime—even the meanest and vilest criminal—with the presumption of

innocence; and we must never allow that presumption to be destroyed by Gestapo tactics. The law is well settled that when a question is raised as to the nature of the confession, the burden is on the State to show its free and voluntary character. *Love* v. *State,* 22 Ark. 336; *Smith* v. *State,* 74 Ark. 397, 85 S. W. 1123; *Bell* v. *State,* 180 Ark. 79, 20 S. W. 2d 618. See, also, West's Arkansas Digest, ''Criminal Law,'' § 531 (1). The state failed to sustain the burden regarding the confession in the case at bar; and the trial court correctly held the confession inadmissible.

So much for the confession. Now back to the opening statement: when the prosecuting attorney made his opening statement to the jury, he knew (by virtue of the defendant's plea of not guilty, if in no other way) that the confession had been repudiated by the defendant. In detailing the confession to the jury in his opening statement, over the defendant's objection, the prosecuting attorney took the responsibility of the consequence of the later adverse ruling on the admissibility of the confession. Of course, the prosecuting attorney did not know in advance what the court would rule on the admissibility of the confession; but reversible error was committed in this case in detailing an alleged confession over the defendant's objections when the confession was later held to be inadmissible. There was a sweet little innocent girl, a vile and heinous crime, a confession detailed by the prosecuting attorney, then the jury left for a day to draw on its own imagination as to what was going on in chambers; the result follows inevitably that no juror could eradicate from his mind what the prosecuting attorney had said in detailing the confession. Just as ink cannot be erased from snow, so the alleged confession, as detailed by the prosecuting attorney, could not be erased from the minds of the jury in this case; and the trial court made no effort to eradicate the said confession from the minds of the jury even after the confession was held inadmissible.

The cases and textbooks support the views herein stated. In *Gehl* v. *State,* 179 Ark. 206, 15 S. W. 2d 396,

this court criticized the practice of allowing the prosecuting attorney, in his opening statement, to read a portion of the testimony taken at the coroner's inquest; and this court said that such practice was error, but that the subsequent admission of the said testimony in evidence cured the error, particularly when the trial court at the time of the opening statement had cautioned the jury that unless the said testimony was admitted in evidence, then the jury would disregard it.

In *People* v. *Laberto,* 212 App. Div. 691, 209 N. Y. S. 544, the Appellate Division of the New York Supreme Court decided a case involving an alleged confession by the defendant to a heinous crime; and that court held that reversible error was committed when, in his opening statement, the attorney for the People of New York detailed to the jury an alleged confession which was not later admitted in evidence. The court said: "The statement was not offered in evidence, doubtless because, under the strenuous objections of the defendant's counsel to the series of questions preliminary to its introduction, the district attorney lost faith in its admissibility. . . . But the district attorney in his opening remarks had told the jury the contents of the statement. He characterized it as a 'written confession of his under oath.' We do not impute bad faith to the district attorney. He undoubtedly intended to use the statement against the defendant and in the progress of the trial changed his mind. But the mischief was accomplished. If the statement had merely been offered in evidence without being characterized as a 'confession' or its contents revealed to the jury and had been excluded, no criticism would be justifiable. But the jury were told before they heard a word of evidence that the defendant had confessed under oath that he had committed all the acts just as claimed by the complaining witness, and thus the unconscious bias against the defendant, which he had doubtless by his examination of the jurors sought to exclude from the jury box, was cast therein immediately on their acceptance by him as jurors. The remarks of the district attorney, surrounded by the influence of his official posi-

tion, were not lost on the jury. A sworn confession of guilt, fairly and voluntarily made in the course of a judicial trial, must ordinarily be fatal to the defense in a subsequent trial of the person who makes such a confession. That was the condition which the jury were told here existed. Nothing was done subsequently to eliminate from their minds the impression they must have received.

"In *People* v. *Wolf,* 183 N. Y. 464, 76 N. E. 592, it was said: 'The general rule is that in opening a case no fact should be stated unless it is material and competent and hence proper to be proved, subject, however, to reasonable latitude where the law upon the subject is not so elementary that every lawyer should know it. . . . Of what use is the rule that jurors must not listen to conversations out of court in relation to the case, or read newspapers containing an account of the transactions involved, if the district attorney, with all the influence of his official position, is permitted to make statements of facts to them in court which it is the very object of rules of evidence to exclude from their consideration?' See, also, *People* v. *Smith,* 162 N. Y. 520, 56 N. E. 1001.''

In *People* v. *Rogers,* 303 Ill. 578, 136 N. E. 470, the Supreme Court of Illinois recognized that it was error for the state's attorney, in his opening statement, to detail to the jury an alleged confession of the defendant; but the Illinois court did not reverse the case since the defendant's attorney had failed to object. In *Commonwealth* v. *Clark,* 292 Mass. 409, 193 N. E. 641, the Supreme Judicial Court of Massachusetts, in passing on the question, held that no error was committed in that particular case because there was no reason offered why the confession should not be admitted in evidence. In *Reagan* v. *People,* 49 Colo. 316, 112 Pac. 785, the district attorney, in his opening statement, detailed a purported confession; but the confession was later admitted in evidence, and the Colorado Supreme Court held that the admission of the confession cured possible error. In 16 C. J. 890, in discussing the opening statement of the prosecuting attor-

ney, it is stated that it is error for the prosecuting attorney to state in detail the confession of the accused if the confession is not properly admissible in evidence. And in 23 C. J. S. 529, it is stated: "The prosecuting attorney may, in opening, . . . refer to the confession of accused or give the substance of its contents if it is properly admissible in evidence."

Bishop on Criminal Procedure (2d Ed.), § 969, in discussing the opening statement of the prosecuting attorney, says: "A confession to be admissible must first be adjudged voluntary. Therefore, since this adjudication cannot precede the trial, and the court may never permit it to reach the jury, the better practice excludes it (the confession) from the opening."

And in Wharton on Criminal Procedure (10th Ed.) § 1496, in discussing the opening statement of the prosecuting attorney, the rule is stated: "While he must open declarations as well as facts, it is indecorous for him to open confessions, evidence of which it is for the court to first weigh before it is admitted. . . . If the prosecuting officer violates these rules, the court may order a juror to be withdrawn, or, in case of conviction, a new trial may be granted when an unfair attempt to prejudice the jury has been successfully made."

Therefore, we hold that reversible error was committed in this case because of the reference to the alleged confession in the opening statement by the prosecuting attorney over the objection of the defendant, and without any cautionary instruction of the court, and because the confession was inadmissible at all times. As we have previously mentioned, the other alleged errors, as claimed by the appellant, will probably not recur on a new trial, so they are not discussed.

Reversed and remanded.

GRIFFIN SMITH, C. J., concurring. After our opinion was handed down, counsel for appellant joined the prosecuting attorney in a stipulation that the trial court did, in fact, instruct the jury that it might fix the defendant's punishment at life imprisonment in lieu of electrocution.

Through error of the reporter, it was said, the instruction was omitted from the transcript. But even if we could permit the record to be amended the result would not be changed, since reversal is required on another ground.