THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* FRANK DESALVO, Appellant.

First Department, March 12, 1937.

*Philip Handelman,* for the appellant.

*Aiken I. Pope* of counsel [*William Copeland Dodge, District Attorney*], for the respondent.

Glennon, J. The defendant was convicted of the charge of impairing the morals of a minor in the Court of Special Sessions. Mr. Justice McDonald dissented and voted to acquit. The defendant was sentenced to a term of imprisonment of six months in the workhouse.

The People called four witnesses to sustain the charge: Stella Ingenito, who was referred to on the trial as the complainant, her mother, Miloslava Ingenito, Mildred Walters and Edward W. Stein, a Children's Society officer.

Stella, the child against whom the crime was alleged to have been committed, was eleven years of age. After examining her, the court decided to take her statement but not under oath, pursuant to the provisions of section 392 of the Code of Criminal Procedure.

Mildred Walters, eight years of age, was sworn as a witness after a preliminary examination. In view of one of the answers she gave as to her religious training, coupled with the fact that during the course of her subsequent testimony she was unable to answer the question, " Do you know what month comes before September? " one may entertain grave doubt that this child fully understood the " nature of an oath."

The crime set forth in the information was alleged to have been committed on August 3, 1936, at a tennis club where the defendant was employed. The hour was fixed as around one o'clock in the afternoon. The scene was laid in a building which consists of three rooms; the first is the office where the players register and also purchase tennis supplies; the second is the women's locker; and the third is the men's locker room.

We do not deem it necessary in view of the nature of the charge to quote at length from the testimony which was adduced to support it. Stella said the first time she ever saw the defendant was on August third, the date the crime was alleged to have been committed, and further, that he repeated the offense thereafter once a week for three weeks. The evidence shows that the defendant was arrested on August seventh, which would seem to indicate that the so-called subsequent offenses during the following three weeks

were simply figments of the child's imagination. Miloslava Ingenito, her mother, after fixing the date as August third, said in part:

" I went in the park to look for her where she generally went, to the swimming pool, and I didn't find her over there, so I was sitting around a little while and finally she came along and her face was very white. It was very hot that day and I asked her what happened and she was terribly frightened. So I didn't bother. I went home and put her to bed that day and asked the next morning and she told me the whole truth.

" Justice —————: What did she tell you?

" The Witness: She told me that this man on several occasions called her in and let her run errands for him and gave her money and gave her tennis balls and made friends with her and then after he placed his hands under the skirts."

Mildred, the eight-year-old child, differed with Stella in that she placed the time of the commission of the crime as the day following the first meeting with the defendant. She stated that the defendant put his hand on Stella " in the front," whereas the latter said that he had touched her " in the back." No attempt was made to fix the date through Mildred, because she apparently was not even familiar with the months of the year. Both children made the statement that the act was committed by the defendant in the office.

According to Edward W. Stein, the agent of the Children's Society, in company with Detective Dillon, he placed the defendant under arrest and took him to the East Sixty-seventh Street Police Station. He claims that while there the defendant made a confession of his guilt. According to Stein, the defendant said in substance, that the crime was committed in the ladies' locker room. In addition thereto, his description of the manner in which the act was perpetrated was at variance with that testified to by the children. The confession, if any there was, was not reduced to writing. Why Detective Dillon was not called as a witness as to the alleged admissions does not appear.

The defendant on his part denied that he had made a confession to Stein. He also denied that he had mistreated Stella. He produced three witnesses who gave testimony as to his good character. At the time of his arrest he had been employed at the tennis club " going on three years." Prior thereto he had been a squash tennis coach for a period of about eighteen years at three of the well-known clubs in New York city, and had worked for one of the largest banking institutions for two years. He never had been convicted of any offense.

In our opinion the defendant is entitled to a new trial, not only because of the discrepancies which are to be found in the testimony of the witnesses called by the People, but also because we believe that his counsel was not given a full and fair opportunity to develop facts which would tend to show that the defendant may have been innocent of the serious charge with which he was confronted. By way of illustration, counsel for defendant on cross-examination asked:

" Q. Will you show the Court where he touched you?

" Justice —————: We have that before us, already.

" [Counsel for defendant]: The child has made so many discrepancies that I don't think it is unfair to ask her about it again.

" Justice —————: No, we have that already."

The statement of counsel, "At this time, your Honors, I would like to again —" was interrupted by the justice presiding, who called the next witness. " No, we have that already," referred to the testimony which had been given by the child on her direct examination. The court must have overlooked the fact that counsel for the defendant had the right on cross-examination to test the credibility of the witness, particularly where, as here, the question was directed to that part of the charge contained in the information which was the basis of the prosecution.

Constant interruptions by the members of the court while the defendant was being examined on direct examination are to be found in the record. Frequently, objections were sustained as to questions asked by counsel for the defendant where the district attorney did not even interpose an objection. Not only were the same tactics pursued by at least one member of the court during the course of the examination of the defendant, but also, it will be observed that they were applied when the defendant's employer, Mr. Bassford, and Miss Fullen were on the stand. The latter, whose testimony was not impeached, was one of the members of the tennis club.

Miss Fullen made a practice of playing tennis every weekday, with the exception of Saturday and Sunday, between one and two. When her attention was directed to the particular day of August third, she was asked if she could recall whether she was there between one and two, the time fixed for the commission of the crime; she answered: " Well, that I wouldn't be able to swear one way or the other." The records of the club showed that on Monday, August third, she had purchased tennis balls at the office. Counsel for the defendant then asked: " If I tell you, Miss Fullen, that Mr. Bassford's records show that you purchased tennis balls on Monday, August 3rd, would that bring any recollection

to you that you played on that day?" The objection of the district attorney was sustained. Since the purpose was to refresh the recollection of the witness, it seems to me that the question was perfectly proper. Mr. Justice McDONALD thereupon took the witness in hand in order to try to develop the truth. In fairness to him it is only proper to say that the questions he put were designed to bring out the testimony in order to ascertain the facts. Even he was interrupted by his associates.

By way of illustrating the manner in which counsel for the defendant was hampered, the following excerpt from the testimony should suffice:

"Q. Then, if you played between one and two on that day —

"Justice ————: Counsellor, there is no evidence that she did play between one and two. Your 'ifs' are very bad.

"Justice McDONALD: She played every day, though, between one and two, and there is a record showing she bought some balls on the 3rd day of August. Do you recall, now, whether you played in the evening of that day?

"The Witness: I never could play in the evening, Judge.

"Justice McDONALD: So that you only played once that day and that was between one and two, your lunch hour.

"The Witness: That is right.

"Q. Well, on that day, do you recall seeing any children around there? A. No, if I was playing, I wouldn't be looking one way or the other for children. I would be playing.

"Q. But, if —

"Justice ———— (interposing): Do you want 'if' again?

"Mr. Handelman: Yes.

"Justice ————: You can't 'if' once. You are not allowed."

We have not attempted to point out other evidence of facts which leads us to the conclusion that this defendant did not obtain a fair trial, since we do not wish to unduly prolong this opinion. However, we believe that enough has been shown to indicate that this defendant is entitled to a new trial where he should be given a full opportunity to present his evidence. If his guilt is established beyond a reasonable doubt, the sentence of six months in the workhouse which was imposed would seem to us to be inadequate. On the other hand, if he is innocent, he should be acquitted.

Perhaps, in closing, it might be well to refer to the opinion of Judge VANN, in *People* v. *Wolf* (183 N. Y. 464, at p. 472) where he said: "An unfair trial, especially in a criminal case, is a reproach to the administration of justice and casts grave responsibility not only upon the prosecuting officer but also upon the trial judge. However strong the evidence against the defendant may be, if she did not have a fair trial, as shown by the rulings of the court,

subject to proper objections and exceptions, the judgment of conviction should be reversed and a new trial ordered so that she may be tried according to law."

The judgment should be reversed and a new trial ordered.

MARTIN, P. J., TOWNLEY, UNTERMYER and DORE, JJ., concur.

Judgment unanimously reversed and a new trial ordered.