THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DONALD
GERALD BURLEY and JAMES JOSEPH CLEMENS, Appellants.

Fourth Department, July 8, 1953.

*John Benjamin Carroll* for Donald Gerald Burley, appellant.

*Garrett T. Mahon* for James Joseph Clemens, appellant.

*Jesse E. Cantor, District Attorney (Charles A. McNutt* of counsel), respondent.

*Per Curiam.* The appellants, Burley and Clemens, were convicted of the crime of grand larceny in the first degree in the County Court of Onondaga County. They were jointly indicted with one Richway who was not tried but who was committed to the Matteawan State Hospital. The indictment charged grand larceny in the first degree in one count and alleged that the three men in the nighttime with intent to deprive the owner thereof and to appropriate certain personal property to their own use, stole a watch, a ring, a pair of cuff links, a bus ticket and about $7 in money from the person of one Edward Taylor.

The appellants were both nineteen years of age and were in the military service and stationed at Camp Drum, New York. They were on pass over the New Year's weekend and the alleged larceny took place around three o'clock on the morning of January 3, 1953, in room 305 of a hotel in Syracuse which had no elevator service and no bellboys. The appellants came to Syracuse from Watertown separately and met each other for the first time in a bar on January 2d. It appears that their main diversion after arriving in Syracuse had been drinking in various bars and taverns and the evidence is such that there can be no doubt that at the time of the fracas in room 305, they were both well intoxicated. During the evening and night of January 2d and 3d, the defendant, Richway, came into the picture. He was known by persons about the hotel and his reputation was unsavory.

It was established that appellant, Clemens, had been in the company of other members of his military unit with whom he came to Syracuse and that he had engaged room No. 305 shortly before 3:00 A.M. of January 3d. The complainant, Taylor, the principal prosecution witness, was superintendent and a teacher at the Beautiful Plains Baptist Church in Binghamton. He

arrived in Syracuse by bus shortly after 8:00 P.M. on January 2d ostensibly to make arrangements for some show in connection with two all colored ball teams. Apparently he had no appointment to meet anyone and transacted no business. Although not a drinking man himself, he had remained at a tavern until nearly 3:00 A.M. and realized he had missed his bus to Binghamton. He sought accommodations for the night at one hotel where he was refused and then engaged a room in the hotel where Clemens registered. Taylor's room was on the floor below No. 305. His testimony, in brief, was that about 3:00 A.M. he walked up the stairs in the hotel for the purpose of going to his room. On the second floor he encountered these appellants and Richway. Richway asked him if he was interested in a party and he told Richway that he always liked parties. He then said that Richway got a " bolak " on him and forced him up to the next floor; that all four men then entered room 305; that Richway threw him down and took off his clothes, or most of them, and took his wrist watch and cuff links. The bus ticket was later found in the room. The money was not recovered nor was the gold ring which Taylor said Burley took off his finger at the request or demand of Richway. It appears that the watch and cuff links were recovered; that they were taken by Richway and were produced on the trial. It was conceded by Taylor that Clemens took nothing. Taylor said that the appellants were intoxicated. Some minutes after entering room 305, Taylor said he escaped and ran downstairs and out of the hotel in his shirt, one shoe and one sock. He had $10 concealed in that shoe. A prowl car came along which he entered and was then taken to the police station where he told his story. The appellants and Richway left the hotel by way of a fire escape from the second floor.

Clemens after descending the fire escape came back into the hotel looking for another drink. The bar was closed and he spent the night on the floor of another hotel room where his army associates were. He was found there by the police in the morning. Burley said he went to the same hotel, saw Clemens in the lobby and decided to return to camp. He went to the bus station where Richway also was and soon thereafter they were both arrested by the police. Both appellants made statements to the police and both testified upon the trial. It was not claimed that Clemens took anything from Taylor. Burley testified he was told he took the ring and made a statement that he did. No ring was produced. Whether Burley took the ring was a

question for the jury. However, all through Taylor's recital of what happened, it appears that the prime mover in the episode was Richway. It became essential to prove that the appellants were accomplices of and coconspirators with Richway if Richway's acts were to be charged to them. Their intent to commit larceny had to be established. The fact that they were intoxicated; that Clemens took nothing and that Burley denied taking the ring made a somewhat weak case on the question of intent. Although there was a case made out for the jury, we feel that the verdict was against the weight of evidence. Even if we were of the opinion that there was sufficient to sustain the verdict, the question of guilt was a very close one and great care should have been taken not to introduce into the trial any extraneous facts or issues which would tend to create prejudice against the defendants or arouse the disgust or passion of a jury.

The statements of the appellants were received in evidence against them. There is little in these statements which could be taken as admissions that the appellants had committed larceny. They tended to show that the appellants were guilty of a crime not charged in the indictment and one for which appellants were not being tried, viz., violation of section 690 of the Penal Law. We see no reason why the portions of these statements relating to another crime were not deleted before reading the statements to the jury. Such portions were irrelevant and prejudicial on the issue of the appellants' intent and participation as accomplices in a larceny. Likewise, after the complainant, Taylor, had given his testimony as to what happened in room 305 so far as it related to larceny, it was brought out by him, on the People's case, that another and different crime was also committed. His testimony as to violation of section 690 of the Penal Law was in no way relevant to the issue of larceny and the degrading nature of the testimony could not help but have had influence upon a jury and that influence could be nothing if not prejudicial.

We also feel that the summation on the part of the prosecution exceeded the bounds of fair comment and argument. It called the jury's attention to " the other acts " and " revolting circumstance." It contained a statement of the personal opinion of the prosecutor that the defendants were guilty and that, of his personal knowledge, certain witnesses for the People were decent and truthful. The prosecutor made an appeal based upon the disgracing of the uniform, stating that there was no evidence

the army wanted the boys back; that "they've got too many good boys that are being hurt and killed in Korea who never committed a crime." Objection was made and the court told the jury to disregard it but said "motion denied" when requested to include "also about the boys in Korea." We think that some of the remarks of the District Attorney were inflammatory and prejudicial. (*People* v. *Tassiello*, 300 N. Y. 425; *People* v. *Fielding*, 158 N. Y. 542.)

The court was requested to charge the jury, as to Burley, that if the testimony left the jury uncertain as to his intent, they should give him the benefit of the doubt and that the jury should take into account the denial of Burley that he intended to take anything, along with all other evidence in the case, on the question of his intent. Those requests were refused. They should have been granted. It having been established by Taylor's testimony and by other evidence that the appellants were drunk, the capacity to form an intent to enter into a larceny with Richway was a prime issue. The appellants were entitled to the benefit of the doubt. (*People* v. *Koerber*, 244 N. Y. 147; *Thorne* v. *Turck*, 94 N. Y. 90; *People* v. *Levan*, 295 N. Y. 26.)

The issue was whether the appellants were guilty of larceny. They were charged with no other crime. Without evidence of such other crime and without the errors which crept into the case, the jury might well have acquitted the appellants. The foreman of the jury stated to the court that reasonable doubt was the point in the jurors' minds. Under the circumstances, this court may order a new trial whether or not proper exceptions were taken. (Code Crim. Pro., § 527.)

The judgments should be reversed on the law and facts and a new trial had.

All concur. Present — McCurn, J. P., Vaughan, Kimball, Piper and Wheeler, JJ.

Judgments of conviction reversed on the law and facts and a new trial granted.