### (July 6, 1971)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CARLOS COHEN, Appellant.— Judgment of the Supreme Court, Bronx County, rendered June 13, 1969, convicting the defendant after a jury trial, is affirmed. There was objection to only some of the prosecutor's allegedly prejudicial remarks at the trial and no exceptions to the charge with respect to the items raised on this appeal. (Code Crim. Pro., § 420-a.) No item in and of itself nor the totality was such as to render the proceeding unfair in order to bring into play section 527 of the Code of Criminal Procedure for a new trial in the interest of justice. Cases where the District Attorney has exceeded the balance of fair advocacy *(People* v. *Ross,* 14 A D 2d 519) cannot be elasticized to cover this record. In *People* v. *Luberto* (212 App. Div. 691), the District Attorney in his opening had given the contents of an alleged written confession and then failed to offer the alleged confession in evidence. In *People* v. *Ware* (13 A D 2d 1015), the District Attorney in his opening stated that a codefendant would testify and indicated the nature of the testimony, which would indeed be prejudicial to the defendant, and then he did not produce the witness nor the evidence involved. Here, there was evidence from which the jury could conclude that there had been flight. The jury specifically was conscious of the question and sent a note saying: "Respectfully request explanation of guilt of flight. Would like to know exactly how much weight this carries in reaching a decision", and the

Trial Judge then reread that portion of his charge which covered the subject. The only objectionable deviation between the opening and the proof given to try to substantiate the opening, was that the prosecutor contended the flight had been to Mexico, when his proof was San Diego, California, a nonmaterial difference under the circumstances. As for the problem with the interpreter, defense counsel, after being given the opportunity for due deliberation with the defendant, made it clear that a mistrial would not be sought. The court then indicated a fair procedure to be followed, with the chief interpreter being substituted, and no objection was taken thereto. In time-honored fashion, the resolution of the questions of credibility, of testimonial conflicts and inconsistencies, and a determination of the guilt or innocence of the defendant was for the jury. (See *People* v. *Seidenshner*, 210 N. Y. 341, 359.) Concur — Capozzoli, McGivern and Kupferman, JJ.; Stevens, P. J. and Murphy, J. dissent in the following memorandum by Murphy, J.: We would reverse and order a new trial. The case concerns the fatal shooting of one Jose Perea in Bronx County. The incident was called to the attention of the police by one Raul Coto who was himself arrested and charged with the homicide. When originally questioned, he remained silent with respect to his participation in the crime or of witnessing the shooting. However, later he implicated one Ruiz and the defendant, Carlos Cohen. At the trial, Coto was the principal witness against the two defendants. The case against Ruiz was dismissed without being submitted to the jury. Cohen was found guilty of murder in the first degree and sentenced to life imprisonment. Defendant contends that certain statements made by the prosecutor in the course of the trial were highly prejudicial to him and so influenced the jury as to deny him a fair trial. That in addition certain of the rulings of the court constituted reversible error. We are of the opinion, after examining the entire record and considering all of the comments made by the prosecutor, that he did exceed the bounds of mere aggressiveness and that this coupled with erroneous court rulings so prejudiced the jury as to prevent a fair trial and determination on the merits. Defendant argues that the opening statement of the prosecutor was prejudicial in that certain allegations made by the prosecutor were never proved or even attempted to be proved. The pertinent portion of his opening to the jury is as follows: " The police responded. They went looking for Carlos Cohen. They found Ruiz soon enough, but not Cohen. They found Cohen months and months later. We'll show you he fled. He was conscious of his guilt and he fled to Mexico where he was found months later. And we will show you that we brought him back from Mexico to California and extradition to New York." No evidence of any kind was ever offered by the People with respect to the defendant fleeing to Mexico or that he had ever been there or that it was his conscious guilt that prompted his fleeing there. With respect to this, except for a statement made by the prosecutor to the court, after the jury had rendered its verdict and had been discharged, the record is totally barren of any proof whatever with regard to Mexico or of any consciousness of guilt. The record reveals that the prosecutor was keenly aware of this for after the jury had reached its verdict and had been discharged, the prosecutor sought the permission of the court to place the following statement on the record: " In my opening I think I told this jury I'm pretty sure I did, that I would indicate and show that the defendant fled to Mexico. At that time — I think it's incumbent upon me to make this statement having consulted my office on it — I had every intention of showing through extradition * * * that the Governor signed the warrant * * * this was my intention at that time * * * I simply wanted to put this on the record, because there may be a question of good faith here. And I do want to show the efforts that I made, and the thoughts that I had, in

proving the fact that he was in Mexico. No doubt about that. But of course, during the trial, and in my summation, I just dropped it, not having offered any proof on that subject." Can it be denied that the opening statement portrayed the defendant as a fugitive from justice; that the seeds of criminal contempt had been planted? Moreover, the court did nothing in its charge or otherwise to play down the impression which the prosecutor had portrayed of a guilty person fleeing to Mexico. The law is clear that where the prosecutor alludes to certain inflammatory prospective proof that is not forthcoming, and no instruction is given by the court to irradicate the impression upon the jury, then the defendant has been denied a fair trial. (*People* v. *Ware,* 13 A D 2d 1015.) In the *Ware* case (*supra*) the prosecutor in his opening address said that there would be certain evidence offered with respect to a robbery that was in issue. The proof was not offered. The trial court failed to deal with the issue in its charge. The Appellate Division reversed the conviction in a memorandum opinion on the ground that the defendant had been deprived of a fair trial. While it may be argued that the prosecutor acted in good faith and really did intend to offer the necessary proof only to change his mind, the well-intentioned or good faith of the prosecutor is not controlling, for it is stated in *People* v. *Luberto* (212 App. Div. 691, 693–694): "We do not impute bad faith to the district attorney. He undoubtedly intended to use the statement against the defendant and in the progress of the trial changed his mind. But the mischief was accomplished. * * * The remarks of the district attorney, surrounded by the influence of his official position were not lost on the jury. * * * The nature of the accusation had a tendency to inflame the minds of the jury and the opening remarks unintentionally, but nevertheless potentially must have contributed to destroy their mental poise." In charging the law of flight, the court failed to refer to other possible motives for flight. The court's charge suggests that it believed that there was flight and that such flight indicated consciousness of guilt. Perhaps the inadequacy of the explanation of flight by the court in its charge is demonstrated by a note from the jury to the court: "Respectfully request explanation of guilt of flight." In addition to the foregoing, we are of the opinion that the conduct and comment of the prosecutor during the entire trial deprived defendant of a fair trial. At one point the prosecutor rehabilitated Coto, his only witness on the identification of the defendant, by eliciting prior consistent statements and asking if the Grand Jury had dismissed the charges against him for the same crime with which defendant Cohen was being tried. During summation, the prosecutor stated: "And sitting as a juror in a case of this kind, gentlemen, if you don't do your job, you are not — you are doing a disservice to humanity, to society and to your country —". This, alone, is sufficient grounds for reversal of the conviction. (*People* v. *Tassiello,* 300 N. Y. 425; *People* v. *Slover,* 232 N. Y. 264; *People* v. *Ross,* 14 A D 2d 519; *People* v. *Christie,* 16 A D 2d 598; *People* v. *Damon,* 24 N Y 2d 256; *People* v. *Tunstall,* 5 A D 2d 338; *People* v. *Burley,* 282 App. Div. 408.) In *People* v. *Nicoll* (3 A D 2d 64, 79) the prosecutor called upon the jury: "'Give me and the People of the State of New York justice.'" This was held to be error. In the case at bar, the prosecutor calls upon an even greater segment of our community, that is: "humanity, society and country." (See, also, *People* v. *Moore,* 26 A D 2d 902.) Throughout the trial the prosecutor — from his official position as an Assistant District Attorney — maligned the character of the defendant. He accused the defendant of misconduct beyond the crime charged by telling the jury as follows: "I say to you, whatever Coto and Perea were doing there, this defendant was doing there. Just try to figure it out. [What was the $300 in the possession of the deceased or the money the deceased

owed the defendant. For what? Money?] What money did Perea owe Cohen? What was it for? Whatever it was that Perea was there, whether it was by appointment to meet Cohen or not, Cohen was in the same business, if we can call it a business, whatever it was, as Perea, and maybe not Coto, but definitely Perea * * * And what was this defendant doing there? * * * If there was some other reasons, some reasons that we do not know about why Perea went to the Sterling Bar — and I say to you gentlemen, it's as plain as day — whatever the reasons were, Cohen was connected with those reasons." There is no support for what amounts to the unsworn testimony of the Assistant District Attorney to be found in the record. In *People* v. *Ross* (*supra*) the conviction was reversed because as in the case at bar, the prosecutor suggested that the defendant there was involved in criminal activity. In *People* v. *Christie* (16 A D 2d 597, *supra*) the prosecutor speculated about a particular character trait of the defendant, as was done here, which resulted in a reversal. If this were not enough, there is additional prosecutorial error in that the prosecutor in his summation, acting as an unsworn witness, and behind the power and prestige of his position and office, told the jury: " I'm in the District Attorney's Office, and up to the time that he was arrested, he had not been confronted by anybody from the District Attorney's Office." This was done again to support Coto — his only eyewitness. The prosecutor then tells the jury that the witness " was in no trouble", despite the fact that the witness had originally been charged with the same homicide. He does not stop there. With regard to another witness who has contradicted Coto, his principal witness, the prosecutor says: " I think she is wrong" and " Now I think Mrs. Halloway was in error"; once again interjecting his own personal view with respect to the evidence. Apparently, the prosecutor had very strong feelings about this particular case which he did not seek to hide from the jury for in his summation he also stated: " There is ample evidence here way beyond a reasonable doubt in my opinion, and I hope that it is your opinion". In *People* v. *Costello* (24 A D 2d 827) the court rebuked the prosecutor for saying that he was " morally convinced" of the guilt of the defendant. In *People* v. *Childess* (*supra*) a conviction was reversed because the prosecutor told the jury he spoke as a " quasi-judicial officer". In *People* v. *Burley* (282 App. Div. 408, *supra*) the court's reversal was predicated upon the prosecution's observation of guilt: " In my personal opinion". This, of course, is almost exactly like the statement made here. In addition to the foregoing, it appears that the court blocked cross-examination with regard to the entire subject of a conversation between the People's principal witness and the Chief Assistant District Attorney of Bronx County as Coto (the principal witness) is supposed to have related it to the codefendant, Ruiz. This took place during the cross-examination of Coto at a time when the defense was seeking to obtain prior inconsistent statements and it should have been permitted. While in several of the incidents cited above proper objection was not taken; nevertheless, this court, pursuant to section 527 of the Code of Criminal Procedure, may review the same and order a new trial where the interest of justice so dictates. There are, however, additional aspects of the case which considered in the totality of all the circumstances surrounding the trial of the action leads one to the conclusion that this defendant in a capital case was denied a fair trial. Examination of the record reveals that the People's principal witness, the only eyewitness, began testifying in English at page 71 of the record. At page 128 the prosecutor informed the court that he had spoken with Mr. Coto, the principal witness, in the morning, and that he, Coto, would like to use an interpreter. Thereafter, through page 323, he testified in Spanish. During the course of his testimony from page 71

until he requested an interpreter at page 128, Coto had already testified to the critical facts of the case. Thus, it appears that the basic facts to the homicide without which testimony the People could not have prevailed were offered through a witness who might very well not have understood the questions posed or the answers given. If otherwise, why did the People ultimately have him testify in Spanish. While it is true that the People were prepared to consent to a mistrial the court did not order one nor did it exercise its discretion and hold a hearing to determine whether the witness understood the questions posed to him in English which he had answered in English. It further developed that the interpreter was unsatisfactory and the following is colloquy with respect thereto: " The Court: Let the record note that yesterday afternoon when I returned from lunch, one of the Court Officers, who is now here, gave me some information which I am going to ask him to repeat. Now would you please give your name to the stenographer and then state for the record, what I had you state yesterday, in the presence of the three lawyers. * * * Court Officer * * * One of the jurors mentioned to me that he believed — excuse me, he believed that the Interpreter was not interpreting properly. He went on to say he thinks the Interpreter is paraphrasing too much. That the Interpreter is saying to the witness ' Answer yes or no ' when that was not part of the question. And that when the witness answered sometimes, the witness added other things to ' yes or no ' which the Interpreter ignored. That's the best that I can remember. [Prosecutor] I think there was something further the gentlemen told us yesterday, something about a number of other jurors. [Court Officer] Oh, yes. He was speaking on behalf of perhaps three others, who agreed with him that the Interpreter was not doing a proper job. The Court: Am I correct in recalling that the three others understand Spanish? Court Officer: There is some confusion about this, because I had asked that, because I was curious myself, when he spoke to me. I first asked him ' Are you affluent with Spanish and English?'. He said, ' Yes '. I said, ' And the others too?'. He said, ' Not all the others,' but they must have been talking about it among themselves and in other words, there were others, about four, I believe. I think he mentioned about three others, who felt this way about the Interpreter." Clearly then, there is serious doubt not only as to whether the witness understood the English portion of his initial testimony as well as whether the translated portions were interpreted correctly. Under the circumstances, it would appear that the interest of justice would have necessitated a hearing to make a proper determination. This was not done. When considered in their totality, we believe that the foregoing represented prosecutional and judicial error sufficient to have deprived the defendant of a fair trial and, accordingly, would reverse the judgment and remand the action for a new trial.